UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STONEEAGLE SERVICES, INC.,

       Plaintiff,

v.                      Case No.: 8:13-cv-2240-T-33MAP

PAY-PLUS SOLUTIONS, INC., and
PREMIER HEALTHCARE EXCHANGE, INC.,

       Defendants.
_____/

## ORDER

This cause comes before the Court pursuant to Plaintiff StoneEagle Services, Inc.'s Opening Claim Construction Brief (Doc. # 122), Defendants Pay-Plus Solutions, Inc. and Premier Healthcare Exchange, Inc.'s <u>Markman</u> Motion to Construe Claims (Doc. # 127), and the claims construction hearing held on May 11, 2015 (Doc. # 183). The claim language in dispute in this case shall be construed as set forth in this Order.

## I.   **Background**

In this patent infringement action, Plaintiff alleges that Defendants willfully infringed Plaintiff's rights under two patents: Reissue Patent No. US RE43,904 E ("the 904 Patent") and Reissue Patent No. US RE44,748 E ("the 748 Patent"). (Doc. # 66 at ¶¶ 1, 8-10 & Ex. A, B). Both patents cover a health care provider reimbursement system, by which

a payor, such as an insurance company, makes "a virtual payment to a medical provider by transmitting a stored-value card account payment of the authorized benefit amount, together with an explanation of benefits." (Id. at ¶¶ 14-16 & Ex. A, B). Plaintiff alleges that Defendants' health care benefits payment processing system, "Pay-Plus™ Select," directly competes with Plaintiff's patented system. (Id. at ¶¶ 17-18). Specifically, Plaintiff "asserts different infringement positions against the Pay-Plus™ Select service: (1) the 'one-fax system' allegedly infringes all of the asserted claims; and (2) the 'two-fax system' and 'hardcopy mailing system' each allegedly infringe claims 7, 13, 19, and 25 of the 748 Patent." (See Doc. # 143 at 8).

To determine whether Defendants infringed the 904 and 748 Patents, it is first necessary to determine the scope of protection the Patents afford. The parties disagree about the proper construction of language contained in several claims of the 904 and 748 Patents; specifically, claims 2, 7, 12, 17, and 22 of the 904 Patent and claims 7, 13, 19, and 25 of the 748 Patent.

The function of patent claims is "(a) to point out what the invention *is* in such a way as to distinguish it from what was previously known, i.e., from the prior art; and (b) to

2

define the scope of *protection* afforded by the patent. In both of those aspects, claims are not technical descriptions of the disclosed inventions but are legal documents like the descriptions of lands by metes and bounds in a deed which *define* the area conveyed but do not describe the land." In re Vamco Mach. & Tool, 752 F.2d 1564, 1577 n.5 (Fed. Cir. 1985)(emphases in original). A patent's claims thus describe the outer bounds of the exclusive rights conveyed by the patent. Ice House Am., LLC v. Innovative Packaging Techs., Inc., No. 3:05-cv-1294-J-33TEM, 2008 WL 2856674, at *3 (M.D. Fla. July 22, 2008) clarified on denial of reconsideration, No. 3:05-CV-1294-J-33TEM, 2008 WL 3305232 (M.D. Fla. Aug. 7, 2008).

In Markman v. Westview Instruments, Inc., the Supreme Court held that the language of a patent claim must be construed by the court, and not the jury. 517 U.S. 370, 391 (1996). This holds true even where conflicting evidence is presented in support of alternative proposed constructions. Id. at 389-90. To that end, the parties have presented evidence on the meaning of disputed language in the patents in suit. (See Doc. ## 122, 127, 183). The Court now determines the meaning of this disputed language.

## II. Legal Standard

"Patent infringement actions are composed of two phases." <u>Alps S., LLC v. Ohio Willow Wood Co.</u>, No. 8:08-cv-1893-T-33MAP, 2010 WL 2347046, at *1 (M.D. Fla. May 19, 2010) <u>report and recommendation adopted,</u> No. 8:08-cv-1893-T-33MAP, 2010 WL 2293274 (M.D. Fla. June 7, 2010). "First, in the claim construction phase, the court determines the scope and meaning of the patent claims as a matter of law, and second, the claims are compared to the allegedly infringing device." <u>Id.</u> (citing <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1454 (Fed. Cir. 1998)).

The construction of claims is based primarily on intrinsic evidence: the claim language, the specification, and the prosecution history. <u>Id.</u> The claim language itself is first in importance when construing the meaning and scope of the patent. <u>Id.</u> Generally, the rule for claim interpretation is that:

> [T]erms in the claim are to be given their ordinary and accustomed meaning. General descriptive terms will ordinarily be given their full meaning: modifiers will not be added to broad terms standing alone. In short, a court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of the claim terms. Thus, if the claim is unambiguous and clear on its face, the court need not consider the other intrinsic evidence in construing the claim.

Id. (quoting Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 1999)). The court must determine what the claim language would have meant to "a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005).

"When the meaning of words in a claim is in dispute, the specification and prosecution history can provide relevant information about the scope and meaning of the claim." Electro Med. Sys., S.A. v. Cooper Life Scis., Inc., 34 F.3d 1048, 1054 (Fed. Cir. 1994). "The specification contains a written description of the invention which must be clear and complete enough to enable those of ordinary skill in the art to make and use it." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The prosecution history "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." Id.

"The [c]ourt must be careful, however, to avoid reading limitations from the specification into the claim." Ice House Am., LLC, 2008 WL 2856674, at *3. "The claim is what limits the scope of the patent, not the specification." Id. The

5

[c]ourt [should] be equally careful to avoid reading the claims too broadly, as would be done if the [c]ourt read claim language according to its dictionary definition rather than in the context of the specification." Id.

The court may also consider extrinsic evidence. Alps S., LLC, 2010 WL 2347046, at *3. Extrinsic evidence is evidence that is external to the patent, such as expert testimony and dictionaries. Id. The purpose of this evidence is to:

> provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

Phillips, 415 F.3d at 1318.

## III. Discussion

### A. Stipulated Phrase

The parties agree that the phrase "stored-value card" should be construed as "credit card, debit card, or EFT card." (See Doc. # 122 at 6).

### B. Disputed Terms/Phrases

Plaintiff provided the Court with a list of terms to construe, whereas Defendants request that this Court construe the entirety of various phrases. (See Doc. ## 122, 127). At

this stage of the proceeding, the Court is called upon to determine what the claim language would have meant to a person of ordinary skill in the relevant art at the time of the invention. Phillips, 415 F.3d at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. Thus, the Court finds it appropriate to construe the various phrases provided by Defendants, which encompass several of the terms proffered by Plaintiff. See Medrad, Inc. v. MRI Devices, Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005)("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). To the extent Defendants have not provided a phrase for this Court to construe, this Court will construe the isolated terms provided by Plaintiff.

### 1. 904 Patent

#### i.   Explanation of Benefits

Plaintiff requests the following construction for this term: "information describing medical services provided to a patient by a health care provider, an amount billed by the

health care provider, and an amount paid by the patient's insurance company." (Doc. # 122 at 7). According to Plaintiff, this construction "comports with the contextual use of the phrase" in the claims, the specification of the 904 Patent, and "with the meaning understood in the medical payments industry." (Id.).

Defendants contend, however, that Plaintiff's construction is flawed as it "(1) conflicts with the use of the term in the claims and specification and (2) excludes embodiments of the invention." (Doc. # 127 at 29). To that end, Defendants argue that the claims refer to "explanation of benefits" as a "tangible item," rather than just "abstract information." (Id.). Furthermore, Defendants suggest that the 904 Patent's specification describes that "explanation of benefits" can include more than the three informational categories proposed by Plaintiff. (Id.). Therefore, Defendants posit that the term "explanation of benefits" should be given its "plain and ordinary meaning." (Id.).

According to the background section of the 904 Patent, "the [explanation of benefits] lists the amount the health care provider billed the Payer's company and the amount the Payer's company paid on the claim. It may also list the contractual discount amount and the patient responsibility."

(Doc. # 66-1). At the <u>Markman</u> hearing, Plaintiff admitted that "explanation of benefits" could contain information, including but *not limited to* the information set forth in its proposed construction. Also at the <u>Markman</u> hearing, Defendants did not dispute that "explanation of benefits" was not limited to a "tangible" form as they proposed.

Therefore, the Court construes the term "explanation of benefits" as follows: "information describing, but not limited to, the amount the health care provider billed the Payer's company, the amount the Payer's company paid on the claim, and the contractual discount amount and the patient responsibility."

> **ii.** **Intercepting the Explanation of Benefits and Payment Information Transmitted from the Administrator to the Health Care Provider**

Plaintiff contends that this phrase should be construed as: "receiving, retrieving, or otherwise obtaining [explanation of payment] sent or conveyed from the administrator to the health care provider." (Doc. # 122 at 16). According to Plaintiff, the 904 Patent specification describes that the administrator generates the explanation of benefits, which may then be merged with other information and that the merged explanation of benefits and payment information is transmitted to the health care provider. (<u>See</u>

Doc. # 183). Thus, Plaintiff submits that the 904 Patent _requires_ that an interim party receive, gather, and retransmit the explanation of benefits and payment information. (Id.).

To the contrary, Defendants suggest the following construction: "receiving, retrieving or otherwise acquiring an explanation of benefits and payment information from a transmission of that information that is sent **directly** from an administrator to a health care provider." (Doc. # 127 at 19)(emphasis added). Defendants argue that the plain meaning of this phrase "expressly requires" such a construction. (Id.).

"In the absence of an express intent . . . the words [of claims] are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art." Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc., 334 F.3d 1294, 1298 (Fed. Cir. 2003). "The prosecution history and patent specification are to be applied to narrow the scope of a claim where the patentee argued a narrow claim construction to obtain allowance of the claim by the Patent Office." Golden Voice Tech. & Training, L.L.C. v. Rockwell Firstpoint Contact Corp., 267 F. Supp. 2d 1190, 1196 (M.D.

Fla. 2003). The United States Court of Appeals for the Federal Circuit stated:

> Even where the ordinary meaning of the claim is clear, it is well-established that "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."

Id. (quoting Pall Corp. v. PTI Techs., Inc., 259 F.3d 1383, 1392—93 (Fed. Cir. 2001)). Thus, "narrowing claim interpretation will be adopted if the accused infringer can establish that the patentee 'defined' the claim as 'excluding' a broader interpretation 'with reasonable clarity and deliberateness.'" Id.

A review of the 904 Patent as a whole fails to demonstrate that the addition of the term "directly" is required, as suggested by Defendants. To that end, Defendants have failed to establish that the claims, specification, and prosecution history of the 904 Patent demonstrate that the patentee, Mr. Robert Allen, defined the claims – with reasonable clarity and deliberateness – to mandate a narrower interpretation (i.e., use of term "directly"). For support, the Court points to the "Detailed Description of the Preferred Embodiment" as an example, which states:

> In FIG. 3, insured having coverage provided by payer consumes services by health care provider.

Health care provider then submits a benefit claim to administrator which adjudicates the benefit claim in accordance with pre-existing guidelines. If payment is appropriate on the benefit claim, a transfer of funds is made between payer's account and its funding account (to which administrator has access). Stored-value card processor then loads funds from funding account onto a stored-value card account. The stored-value card account is chargeable only on a medical services terminal and it cannot be charged over the amount loaded onto it. The card number, the security verification code, and the expiration date of the debit card account are merged with the explanation of benefits generated by administrator into image file which is then transmitted back to health care provider.

(Doc. # 66-1 at 8). There is no requirement – explicit or otherwise – that such transmission shall go directly from administrator to health care provider, as suggested by Defendants.

At the Markman hearing, Defendants indicated that they agreed to construe the term "intercepting" as "obtaining;" however, did not agree to the additional language – "receiving, retrieving, or otherwise obtaining" – proposed by Plaintiff. Thus, as the parties agree to a definition – "obtaining" – the Court is satisfied with this construction.

Therefore, taking into consideration other constructions, as detailed below, the phrase "intercepting the explanation of benefits and payment information

12

transmitted from the administrator to the health care provider" shall be construed as follows: "obtaining information describing, but not limited to, the amount the health care provider billed the Payer's company; the amount the Payer's company paid on the claim; and the contractual discount amount and the patient responsibility and payment information, which is sent or conveyed from the administrator to the health care provider."

### iii.   **Single-Use**

Plaintiff requests that this Court construe this term "in the same manner as it was construed by the PTAB[1]:" "associated with a single type of card to be used with a single type of services terminal and no other type of payment terminal for a single payment." (Doc. # 122 at 10). Plaintiff posits that such construction is "consistent with a fundamental utility and advantage of the invention as described in the specification – to reconcile each single-payment with a single card charged for that approved benefit." (Id.).

Defendants do not suggest that the PTAB's construction is wrong, but point out that "the PTAB's construction [of the

---

[1] PTAB stands for Patent Trial and Appeal Board.

phrase single-use] does not necessarily reflect how one of skill in the art would understand the terms after reading the entire patent under <u>Phillips</u>. The PTAB 'employ[s] different evidentiary standards and rules for claim construction than district courts.'" (Doc. # 151 at 19). Thus, Defendants propose construing this term as "single account that is used for a single benefit payment." (<u>Id.</u>).

Upon review of the 904 Patent as a whole, the Court adopts Plaintiff's construction in part. For the reasons discussed below; in particular, in the Court's discussion on the phrase "unique, single-use stored-value card account," the Court finds it necessary to delete from Plaintiff's proposed construction the phrase "single type of services terminal." Therefore, the Court construes the term "single-use" as follows: "associated with a single type of card to be used for a single payment."

### iv. **Loading a Unique, Single-Use Stored-Value Card Account by One or More Computers with an Amount Equal to a Single Adjudicated Benefit Payment**

Plaintiff submits that this phrase should be construed as: "using one or more computers to designate for, fund, or otherwise associate funds with a one of a kind, credit card, debit card, or EFT card account, which card account is associated with a single type of card to be used with a single

14

type of services terminal and no other type of payment terminal for a single payment, in an amount equal to a single, adjudicated benefit payment." (Doc. # 122 at 18). Plaintiff argues that this construction is "consistent with the contextual use of the terms in the respective claims, the specification as a whole, and the opinion of Defendants' own expert" – Mr. Thomas N. Turi. (Id. at 11).

Defendants argue against Plaintiff's construction as "[Plaintiff] proposes the exact same construction for ['loading' and 'funding']. But, [Plaintiff's] proposed construction seeks to broaden the two simple terms to also include (i) 'designating for' and (ii) 'associating funds with.' In other words, [Plaintiff] argues that 'funding' means 'funding' **and** two other alternatives to 'funding.'" (Doc. # 169 at 10–11)(internal citations omitted)(emphasis in original). Instead, Defendants propose the following construction of this phrase: "funding a unique, single-use stored-value card account with money in an amount equal to a single, adjudicated benefit payment using one or more computers." (Id.).

To support their position, Defendants provide that (1) claim 7 of the 904 Patent requires "loading," which Defendants argue equals "funding" the account and (2) claims 17 and 22

15

of the 904 Patent expressly require "funding" or a "system operable to fund" a single-use stored-value card account with an amount equal to the approved payment by one or more computers. (Id.).

The parties agree that "loading" means "funding," albeit Plaintiff seeks additional alternatives to funding. However, upon review of the 904 Patent as a whole, the Court finds it unnecessary to add the additional alternatives as requested by Plaintiff. Namely, as suggested by Defendants, it is unclear what Plaintiff means by "designating for" or "associating funds with," and therefore, Plaintiff's construction "injects ambiguity into the claims" of the 904 Patent. (See Doc. # 151 at 21). Rather, "loading" should be afforded its customary and ordinary meaning, which the Court finds is "funding."

Thus, taking into consideration other constructions, the Court construes the phrase "loading a unique, single-use stored-value card account by one or more computers with an amount equal to a single adjudicated benefit payment" as follows: "funding – by one or more computers - an account – that is only used once – [for funding a credit, debit, or EFT card] that is associated with a single type of card to be

used for a single payment, to an amount equal to a single adjudicated benefit payment."

          **v.**   **Merging . . . Into a Computer Generated Image File, Merging . . . Into a Document by one or More Computers, Merging . . . Into an Electronic File by Said One or More Computers, and Merge . . . in an Electronic File**

Plaintiff suggests that the terms "merge" and "merging" should be construed as: "combining together, combine." (Doc. # 122 at 12). According to Plaintiff, these terms are "non-technical terms that are used in the 904 Patent in keeping with their ordinary meaning." (Id.). To further support its position, Plaintiff points to the dictionary definition of the term "merge" – "to join together; unite; combine." (Id.)(citing www.merriam-webster.com). Plaintiff also turns to Defendants' expert – Mr. Turi – who Plaintiff contends similarly equated the term "merge" with "combine." (Id.).

Defendants submit that, in the context of the relevant Patents, the proper construction of the above phrases is: "using a computer to combine into **one** [image file/electronic document/electronic file] the stored-value card account number, the adjudicated benefit payment amount, the expiration date, the card verification value code, and the explanation of benefits." (Doc. # 127 at 12)(emphasis added). According to Defendants, the plain language of the 904 Patent

17

(and 748 Patent) requires "merging" into a **single** electronic file or document **both** the (1) stored-value card payment information and (2) an explanation of benefits. (Id.)

As set forth in Baldwin Graphic Systems, Inc. v. Siebert, Inc., "an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" 512 F.3d 1338, 1342-43 (Fed. Cir. 2008)(quoting KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000)). "The subsequent use of definite articles 'the' or 'said' in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning." Id.

The exceptions to this rule are "extremely limited:" a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one." Id. at 1342. Thus, an exception only arises "where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule." Id.; see C.I.R. v. Driscoll, 669 F.3d 1309, 1312 (11th Cir. 2012)("[A]s the Federal Circuit noted, its rule that 'a . . . means more than one,' does not apply where language, history, or context require a departure from that rule.").

Here, the abstract for the 904 Patent (and 748 Patent) states that the Patent involves "[a] method of facilitating payment of health care benefits to on behalf of a payer comprising the step of electronically transmitting a stored-value card account payment of the authorized benefit amount **concurrently** with an explanation of benefits." (See Doc. ## 66-1, 66-2)(emphasis added). Plaintiff argues that the rule of singularity is inappropriate because while the prosecution history dealt with a claim that used the word "concurrently," that word does not appear within the claims of the 904 Patent (and 748 Patent). (Doc. # 171 at 5). Rather, Plaintiff submits that the "concurrently" language is an artifact of the prosecution history of the 686 parent patent, which is why both the 904 and 748 Patent have identical specifications. (See Doc. # 183). Therefore, Plaintiff suggests that if this Court adopts Defendants' construction, it would improperly limit every "merging" term contained in the 904 Patent (and 748 Patent). (Doc. # 171 at 8).

To the contrary, Defendants point to the prosecution history of the relevant Patents, and argue that "the claims must be understood to require creating and transmitting a single electronic file containing [explanation of benefits] and card payment information." (Doc. # 127 at 15). According

19

to Defendants, Plaintiff's original claims attempted to cover transmitting the explanation of benefits and card information at the same time (i.e., concurrently). (Id.).

However, Defendants provide that the original claims were rejected in view of a prior art reference that already disclosed such "concurrent transmission," and in response, Plaintiff "cancelled its initial claims and submitted new claims explicitly limited to claimed transmission of a 'computer-generated image file' containing 'both' the payment information and the explanation of benefits." (Id.). Plaintiff's amendment was successful. (Id.).

According to Defendants, "[i]n the Notice of Allowability, the [Patent and Trademark Office] explained that the claims were allowed, in part, because the prior art failed to disclose 'creating a computer-generated image file containing the stored-value card account number . . . [and] an explanation of benefits.'" (Id.). Therefore, Defendants argue that Plaintiff "surrendered that claim scope during prosecution of its original patents," and Plaintiff is thus "estopped from asserting that products that transmit [explanation of benefits] and payment information in separate files, even if they are transmitted concurrently, fall within the scope of its claims." (Id.)(citing Festo Corp. v. Shoketsu

20

Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 733
(2002)("Estoppel is a 'rule of patent construction' that
ensures that claims are interpreted by reference to those
'that have been cancelled or rejected.'"); MBO Labs. v.
Becton, Dickinson & Co., 602 F.3d 1306, 1313 (Fed. Cir.
2010)("[A] patentee's reissue claims are invalid when the
patentee broadens the scope of the claim in reissue to cover
subject matter that he surrendered during prosecution of the
original claim.")).

To support their position, Defendants rely on Tivo, Inc.
v. EchoStar Communications Corp., 516 F.3d 1290 (Fed. Cir.
2008). In Tivo, the court was asked to determine whether the
relevant term "50X DVRs" satisfied the "assembles"
limitation. Id. at 1302. The defendant argued that the
"'assembles' limitation covers only the assembly of audio and
video components into a single, interleaved MPEG stream." Id.
However, the plaintiff suggested that the "'assembles'
limitation also covers the assembly of each component, audio
and video, into its own separate stream." Id. Upon review,
the Tivo court indicated that:

> Unlike the case in Baldwin Graphic, where the
> claims and the written description could be read to
> encompass either a singular or plural
> interpretation of "a" or "an," the claims and

> written description in this case make clear that
> the singular meaning applies. The pertinent claim
> language refers to "assembl[ing] said video and
> audio components into an MPEG stream," which in
> context clearly indicates that two separate
> components are assembled into one stream, not that
> the video components are assembled into one stream
> and the audio components into a second stream.

Id. Here, the Court cannot overlook the fact that the Tivo court found that the claim language "clearly indicates," that the written description requires a "singular meaning." That is not the case here. Rather, as in Baldwin Graphic, the Court finds that the written description *could be* read as a singular or plural interpretation.

In Baldwin Graphic, the Court was tasked with determining whether the district court erred in, among other things, construing the term "a pre-soaked fabric roll" as "a single presoaked fabric roll." 512 F.3d at 1338. The Baldwin Graphic court disagreed with the district court's construction. Id. at 1342-43. In doing so, the court found that the record was devoid of a "clear indication that the applicant departed from the general rule for the 'a.'" Id. at 1343. Further, the court noted "[n]othing in the claim language, specification, or prosecution history compels an exceptional reading of 'a' in this case." Id. The court also

determined that the patent's specification did not require a singular reading: "Under the terms of this description, the plastic sleeve **could** be in intimate contact with multiple fabric rolls . . . This description contains no requirement, implicit or explicit, that the plastic sleeve must be in intimate contact with the entire fabric roll." Id. Therefore, the Baldwin Graphic court concluded that "a pre-soaked fabric roll" is not limited to a "single roll." 512 F.3d at 1338.

Here, like in Baldwin Graphic, upon review of the prosecution history, specification, and the context of the 904 Patent (and 748 Patent), the Court finds that the term "merge" does not **require** application of the rule of singularity. The Court notes that Defendants rely on illustrations; specifically, figure 4, to bolster their position. (Doc. # 151 at 11). However, figure 4 is an "exemplary embodiment" and not the only embodiment of the relevant Patents. To that end, as articulated by Plaintiff, both Patents state that "matters contained in the . . . description or shown in the accompanying drawings shall be interpreted as illustrative and not in a limiting sense." (Doc. ## 171 at 8, 66-1 at 8, 66-2 at 9). Thus, the Court is not persuaded by Defendants' argument.

Furthermore, the Patent materials are devoid of any indication that the plain language of the claims "clearly indicate" that the relevant information should be merged into a "single" or "one" file or document. Finally, Defendants suggest that the Patent and Trademark Office examiner allowed the Patents' claims because the prior art "fails to disclose the stored value card is loaded with funds equal to the authorized benefit payment, and creating a computer-generated image file containing the stored-value card account number, a card verification value code, and expiration date, and an explanation of benefits." (Doc. # 127 at 15). However, even if true, this contention does not suggest that the 904 Patent (and 748 Patent) **requires** merger of this relevant information into a "single" or "one" file or document.

Further, it is telling that the PTAB determined that "[a] relevant definition of the term 'merge' is '[t]o combine two or more items, such as lists, in an ordered way and **without changing the basic structure of either**.'" (Doc. # 122-6 at 12)(emphasis in original). The PTAB found that this definition was "consistent with the [s]pecification (e.g., the depiction in Fig. 4) of the 904 patent," and that this was the broadest reasonable construction. (Id.). The Court recognizes that the standard required of the PTAB is different

24

than the standard required of this Court at the claim construction phase; however, the Court finds that the PTAB's construction is helpful to its present analysis.

Both parties agree that the terms "merge" and "merging" equate to "combine," although the parties disagree as to whether it is to "combine" the information into one single document or file. Therefore, the Court determines that the appropriate construction of the phrases: (1) "merging . . . into a computer generated image file" is "combining . . . into a computer generated electronic file that contains an image;" (2) "merging . . . into a document by one or more computers" as "combining . . . by one or more computers a writing conveying information that can be stored as a file;" (3) "merging . . . into an electronic file by said one or more computers" as "combining . . . into an electronic file by said one or more computers;" and (4) "merge . . . in an electronic file" as "combine . . . in an electronic file."

### vi.   Image File

Plaintiff requests a construction of this term as follows: "an electronic file that contains an image," which Plaintiff argues is consistent with the 904 Patent specification, claim 2 of the 904 Patent, and the PTAB's construction of the term. (Doc. # 122 at 13). At the Markman

hearing, Defendants indicated that they did not disagree with Plaintiff's construction, but did not think a construction of this term was necessary for the jury. However, this Court finds that construction of this phrase is appropriate under the circumstances as the Court finds that it would be helpful to the trier of fact. Therefore, as the parties do not disagree on Plaintiff's proposed construction of the term, the Court will construe the term "image file" as "an electronic file that contains an image."

### vii.   Transmitting and Transmitted

Plaintiff contends that these terms mean: "sending or conveying from one person or place to another" and "sent or conveyed from one person or place to another." (Doc. # 122 at 13). Plaintiff argues that these terms "are common, non-technical terms that are used in the 904 Patent in keeping with their ordinary meaning." (Id.). To that end, Plaintiff points to the dictionary definition of the term "transmit" -- "to send or convey from one person or place to another." (Id.)(citing www.merriam-webster.com).

Defendants, however, submit that the 904 Patent should be read in the computer context, and the terms "transmitting" and "transmitted" should be given their ordinary and customary meaning: "electronically transmitting." (Doc. # 127

at 28). While the Court agrees with Defendants that the ordinary meaning of these terms should apply, the Court disagrees that such meaning of these terms establishes that the terms "transmitting" and "transmitted" should be construed as "electronically transmitting" and "electronically transmitted."

Some of the claims within the 904 Patent explicitly require "computer generated" activity, while others do not. Therefore, the Court declines to read the "electronic" limitation into claims where such limitation is not explicit in the claim language itself. Doing otherwise "would add redundancy to the claims where the limitation is explicit and improperly narrow claims where it is absent." (See Doc. # 171 at 6).

For example, if this Court were to construe these terms as suggested by Defendants, claim 12 of the 904 Patent would read in relevant part, *"wherein the stored-value card account number is linked to a unique, single-use stored-value card account pre-funded with an amount equal to a single, adjudicated benefit payment, and wherein the document is electronically [electronically sent or conveyed] to the health care provider as payment for the medical services by*

*aid one or more computers.*" (Doc. # 66-1 at 9). Such repetitive language is unnecessary.

The Court finds that the ordinary and customary meaning of these terms is "sending or conveying from one person or place to another" and "sent or conveyed from one person or place to another." Therefore, the terms "transmitting" and "transmitted" shall be construed as follows: "sending or conveying from one person or place to another" and "sent or conveyed from one person or place to another."

### viii.  <u>Document</u>

Plaintiff requests a construction of this term as follows: "a written, printed, or electronic matter that provides information." (Doc. # 122 at 14). According to Plaintiff, such construction is consistent with the ordinary meaning of that term, which is defined as "a writing conveying information." (<u>Id.</u>)(citing www.merriam-webster.com).

Defendants submit that the asserted Patents are "directed to computerized systems and methods for transmitting payment and explanations of benefit to health care providers." (Doc. # 127 at 17). To that end, Defendants contend that "[a] person of ordinary skill in the art would understand [this] claim term to be within the specific computer context." (Doc. # 151 at 5). Therefore, Defendants

28

posit that the term "document" should be construed as: "a piece of text considered to be a single item and usually stored as a file." (Id.). However, as stated previously, (1) there is no clear intent in the 904 Patent that the patentee, Mr. Allen, sought to have "document" defined as a "single item" and (2) the Court declines to generally read the "electronic" limitation into the claims of the 904 Patent where such limitation is not explicit in the claim language itself. Accordingly, the term "document" will be construed as follows: "a writing conveying information that can be stored as a file."

### ix.  <u>Unique</u>

Defendants request that this Court construe several phrases that contain the term "unique":

### a. <u>Unique, Stored-Value Card Account</u>

Plaintiff proposes that the term "unique" be construed as "one of a kind." (Doc. # 122 at 15). Plaintiff provides that this term is "a common, non-technical term that is used in the 904 Patent in keeping with its ordinary meaning." (Id.). Furthermore, Plaintiff points to the dictionary definition of "unique" – "being the only one" - to support its position. (Id.)(citing www.merriam-webster.com). The Court notes that at the <u>Markman</u> hearing, Plaintiff indicated

that what is being conveyed by the ordinary meaning of the term "unique" in the 904 Patent is that an individual has an account that is not going to be reused. To that end, Plaintiff's description of the term's ordinary meaning is in line with Defendants' proposed construction stated below – "only used once."

Defendants contend that "with regard to the term 'unique' the specification is silent on the meaning." (Doc. # 127 at 22). Therefore, Defendants suggest that in context "the term 'unique' as used to modify 'stored-value card account' means an account that is only used once." (Id.). Thus, Defendants request the proposed construction for the phrase "unique, stored-value card account": "an account (for funding a credit, debit, or EFT card) that is only used once." (Doc. # 169 at 9). As Plaintiff admits that what is being conveyed is in line with Defendants' proposed construction, the Court adopts Defendants' proposed construction.

### b. Unique, Single-Use Stored-Value Card Account

Plaintiff construes this phrase as: "a one of a kind, credit card, debit card, or EFT card account, which card account is associated with a single type of card to be used with a single type of services terminal and no other type of payment terminal for a single payment." (Doc. # 122 at 20).

Conversely, Defendants seek the following construction of this phrase: "a single account (for funding a credit, debit, or EFT card) that is only used once for a single benefit payment." (Doc. # 127 at 21). To support their position, Defendants argue that:

> Within the context of the patent, "single-use" means a single account that is used for a single benefit payment. The specification uses the word "single" only to describe an account for making a "single benefit payment" with a card. The patent further describes "one-time use" cards that can only be charged for the benefit amount and cannot be overcharged. [Therefore,] [i]n context, one of ordinary skill in the art would accord "single-use" this meaning, requiring a single account for making a single benefit claim payment . . . [Further,] in context "unique" as used to modify "store-value card account" means that [it] is only used once.

(Id. at 22)(internal citations omitted).

Defendants further argue that Plaintiff's proposed construction "runs afoul of the doctrine of claim differentiation as it provides that an independent claim should not be construed as requiring a limitation added by a dependent claim." (Id. at 23). Namely, Defendants contend that claims 5, 11, 16, 21 and 26 of the 904 Patent provide that the stored-value card account is **only** chargeable through a medical services terminal. (Id.). Therefore, Defendants request that the Court reject Plaintiff's effort to read the

31

"medical service terminal" limitation from the dependent claims (claims 5, 11, 16, 21 and 26) into the remaining independent claims of the 904 Patent. (Id.).

Under the doctrine of claim differentiation, each claim in a patent is presumptively different in scope. Comark Comm'ns., Inc. v. Harris Corp., 156 F.3d 1182, 1187 (Fed. Cir. 1998). "[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim[,] [a]lthough that presumption can be overcome if the circumstances suggest a different explanation, or if the evidence favoring a different claim construction is strong. . . ." Reckitt Benckiser Inc. v. Watson Labs., Inc., 430 F. App'x 871, 877 (Fed. Cir. 2011); see Karlin Tech., Inc. v. Surgical Dynamics, Inc., 177 F.3d 968, 971–72 (Fed. Cir. 1999) (explaining that the doctrine of claim differentiation "normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend").

Here, the specification of the 904 Patent indicates that "the stored-value card account payment may only be charged through a medical services terminal." (See Doc. # 66-1). Further, claims 5, 11, 16, 21, and 26 provide that the stored-

32

value card account is only chargeable through a medical services terminal. (Id.). However, in other claims (i.e., claim 1), no such limitation exits; the limitation is not carried from the specification to the claim itself. Therefore, the Court declines to include Plaintiff's suggested limiting language – "to be used with a single type of services terminal [(i.e., medical services terminal)] and no other type of payment terminal" throughout all claims of the 904 Patent. Accordingly, the Court adopts the following construction for the phrase "unique, single-use stored-value card account": "an account (for funding a credit, debit, or EFT card) that is only used once and is associated with a single type of card to be used for a single payment."

  c. **A Unique, Single-Use Stored-Value Card Account Prefunded With an Amount Equal to a Single, Adjudicated Benefit Payment**

Plaintiff construes this phrase as: "a one of a kind, credit card, debit card, or EFT card account, which card account is associated with a single type of card to be used with a single type of services terminal and no other type of payment terminal for a single payment, in an amount equal to a single, adjudicated benefit payment." (Doc. # 122 at 20).

Defendants argue that this phrase should be construed as "a unique, single-use stored-value card account that is

33

funded with money in an amount equal to a single, adjudicated benefit payment before the card information is transmitted to the health care provider." (Doc. # 127 at 25). To support their position, Defendants provide that claim 12 of the 904 Patent includes an additional requirement that the account be "prefunded" – (i.e., that money be transferred into the account before the card information is transmitted to the health care provider.) (Id.). Specifically, Defendants assert that the 904 Patent "specification describes that by prefunding the card account to the authorized benefit amount, it is not possible to charge more than the authorized benefit amount." (Id. at 25-26). The other asserted claims in the 904 Patent similarly require "loading" or "funding" an account, but do not include the limitation that the account be funded with the authorized amount in advance of sending the card information. (Id.). Therefore, Defendants argue that Plaintiff's proffered construction reads limitations into the claims of the 904 Patent that are unsupported by any understanding of the word prefunded. (Id.). The Court agrees.

Claim 12 is the only claim in the 904 Patent with the "prefunded" requirement, and therefore, the Court declines to adopt Plaintiff's generalized construction to apply to all claims of the 904 Patent. Rather, the Court adopts the

34

Defendants' proffered construction and incorporates it into
previously determined constructions. Thus, the phrase "a
unique, single-use stored-value card account prefunded with
an amount equal to a single, adjudicated benefit payment"
shall be construed as: "an account (for funding a credit,
debit, or EFT card) that is only used once and is associated
with a single type of card to be used for a single payment
that is funded with money in amount equal to a single,
adjudicated benefit payment before the card information is
sent to the health care provider."

### x. Sending and Send

Plaintiff suggests that the terms "sending" and "send"
should be construed as "delivering" and "deliver." (Doc. #
122 at 15). Plaintiff argues that these are "common, non-
technical terms" that should be afforded their ordinary
meaning. (Id.). To support its contention, Plaintiff points
to the dictionary definition of the term "send" as (1)
"deliver" and (2) "to cause to go or be carried, dispatch,
convey, or transmit." (Id. at 15-16)(citing www.merriam-
webster.com). According to Plaintiff, "Defendants do not
propose construing any terms in the 904 patent containing
'sending' or 'send,' but have not agreed to the construction
proposed by [Plaintiff]." (Id. at 16).

35

Defendants suggest that the term "sending" should be given its ordinary and customary meaning. (Doc. # 127 at 28). Defendants further argue that Plaintiff's construction is not within the computerized context of the 904 Patent, and thus, Plaintiff's construction, attempts to remove any requirement that the claims be rooted in computer implemented technology. (Id.).

Here, in the context of the 904 Patent, both parties agree that the terms "sending" and "send" should be afforded their ordinary meaning. The Court agrees; and likewise, the Court finds it unnecessary to construe these common, non-technical terms. Further, the Court previously determined that it will not narrow the 904 Patent claims to be read generally in the computer context.

### xi.   Acquiring a Single-Use Stored-Value Card Account Number and Loading it With Funds Equal to the Authorized Amount

Plaintiff suggests the following construction for this phrase: "obtaining a credit card, debit card, or EFT card account number associated with a single type of card to be used with a single type of services terminal and no other type of payment terminal for a single payment and designating for, funding, or otherwise associating funds with, such card account in an amount equal to the authorized amount." (Doc.

36

# 122 at 17). Plaintiff submits that this construction is a combination of (1) the stipulated construction of the term "stored-value card," (2) Plaintiff's proposed constructions for "single-use" and "loading," and (3) the ordinary meaning of "acquiring." (Id.). Plaintiff provides that "acquiring" is defined as – "to come into possession or control of often by unspecified means." (Id.)(citing www.merriam-webster.com). Thus, according to Plaintiff, the proposed construction of "acquiring" as "obtaining" is consistent with its ordinary meaning and its use in the 904 Patent. (Id.).

To begin, Defendants submit that claim 2 of the 904 patent is invalid as indefinite under 35 U.S.C. § 112[2] because it states an impossibility: "loading an 'account number' with funds." (Doc. # 127 at 26). Specifically, Defendants argue that the claim requires "loading a single-use, stored-value card account **number** with funds in the amount of the authorized payment." (Id. at 27)(emphasis in original).

---

[2] Pursuant to 35 U.S.C. § 112(a), "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."

However, the stored-value card account number refers to a number that identifies an account for funding a credit, debit, or EFT card. (Id.). Thus, Defendants suggest that the account number is distinct from the account itself and cannot be loaded with funds. (Id.). Nevertheless, to the extent this Court disagrees with Defendants' "indefiniteness argument," Defendants contend that Plaintiff's proposed construction should not be adopted. (Doc. # 169 at 11). Noteworthy, Defendants do not provide this Court with a proposed construction.

"Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." Apotex, Inc. v. UCB, Inc., 970 F. Supp. 2d 1297, 1331 (S.D. Fla. 2013) aff'd, 763 F.3d 1354 (Fed. Cir. 2014)(internal quotations omitted). Thus, this Court primarily considers the intrinsic evidence consisting of the claim language, the specification, and the prosecution history. Id. In addition, similar to claim construction, a court may consider certain extrinsic evidence in resolving disputes regarding indefiniteness. Id.

"A claim is invalid as indefinite . . . if the claim is not amenable to construction." Merial Ltd. v. Velcera Inc.,

38

877 F. Supp. 2d 1348, 1359-60 (M.D. Ga. 2012). "Because a claim is presumed valid, a claim is indefinite **only** if the claim is insolubly ambiguous and no narrowing construction can properly be adopted." Id. (emphasis added)(internal quotation marks omitted). In addition, "[a] patent is invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2123 (2014).

Upon consideration of Defendants' "indefiniteness" challenge, the Court determines that Defendants have failed to meet their burden. Defendants have not only failed to prove indefiniteness clearly and convincingly, they have failed to present *any evidence i*n support of their position. Rather, the Court determines that a person skilled in the art – looking at the 904 Patent as a whole – would understand that an **account** for a stored-value card, which is **identified by a number**, is associated (i.e., loaded) with funds. Claims should be construed, if possible, as to sustain their validity, Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed. Cir. 1999), and for the reasons above, the Court finds that claim 2 is not invalid for indefiniteness.

Thus, the Court turns to the construction of this phrase. Considering the 904 Patent as a whole, and the Court's previous constructions, the Court finds that the proper construction for the phrase "acquiring a single-use stored-value card account number and loading it with funds equal to the authorized amount" is: "obtaining a credit card, debit card or EFT card account number associated with a single type of card to be used for a single payment and funding it with funds equal to the authorized amount."

### xii.   Creating a Computer Generated File Containing . . . by one or More Computers

According to Plaintiff, this phrase should be construed as: "using one or more computers to create one or more related documents that contain . . ." (Doc. # 122 at 19). Plaintiff contends that this construction uses the ordinary meaning of the term "file," which is defined as "an orderly arrangement of papers, cards, etc., as for reference." (Id.)(citing www.merriam-webster.com). Plaintiff further provides that Defendants' proposed construction is composed of commonly understood, non-technical terms that should be accorded their ordinary meaning and, therefore, no construction is required. (Id.).

Defendants suggest that this phrase should be construed as "using a computer to generate one computer file containing the stored-value card account number, the adjudicated benefit payment amount, the expiration date, the card verification value code, and the explanation of benefits." (Doc. # 127 at 18). To support their position, Defendants provide the following rationale: (1) claim 7 of both Patents requires "creating a [ ] file . . . by one or more computers;" (2) claim 7 of the 904 Patent further specifies that the file is "computer generated" in addition to specifying that it is created "by one or more computers;" (3) the file must contain "the stored-value card account number, the adjudicated benefit payment amount, a card verification value code, an expiration date, and the explanation of benefits; and (4) both patents require "sending the file to the health care provider." (Id.). Therefore, Defendants argue that the plain language of the "creating . . ." phrase, read in the context of the 904 Patent specification, "requires using a computer to generate a single computer file containing the card information and the [explanation of benefits]." (Id.).

For the reasons set forth above; specifically, within the Court's analysis on the terms "merge" and "merging," the Court declines Defendants' narrow construction. Instead, by

incorporating its previous constructions, the Court determines that the construction of the phrase "creating a computer generated file containing . . . by one or more computers" is: "using one or more computers to create one or more computer generated related documents containing. . . ."

### xiii.   **Stored-Value Card Account Number**

Plaintiff submits that the construction of this term should be "a credit card, debit card, or EFT card account number." (Doc. # 122 at 20). However, Defendants argue that this term should be construed as "a number that identifies or that **is linked** to an account for funding a credit, debit, or EFT card." (Doc. # 127 at 20)(emphasis added). According to Defendants, claim 7 of the 904 Patent states that "the stored-value card account number is linked to a . . . stored-value card account pre-funded with an amount equal to a single, adjudicated benefit payment." (Id. at 21). Therefore, Defendants contend that "the card 'account' holds funds (i.e., money) in the amount of the payment, [whereas] the card account number is the number that identifies or is **linked** to the account. It is the card account number that is transmitted to the provider in the same file or document as the EOB." (Id.)(emphasis added).

Upon review of the plain language of the 904 Patent, the Court finds that adoption of Defendants' proposed construction is unnecessary to assist the trier of fact. Rather, the Court determines that it is appropriate to construe this phrase using its plain and ordinary meaning: "a credit card, debit card, or EFT card account number."

### xiv. Single-Use Stored-Value Card Account

Based on the Court's previous constructions, the Court determines that this phrase should be construed as follows: "an account (for funding a credit, debit, or EFT card) that is associated with a single type of card to be used for a single payment."

### 2. 748 Patent

The parties request that this Court construe several terms and phrases in the 748 Patent that this Court has already addressed in its analysis of the 904 Patent; specifically, the following terms and phrases: (1) unique, (2) unique, stored-value card account, (3) unique, single-use stored value card account, (4) explanation of benefits, (5) document, (6) single-use, (7) stored-value card account number, (8) "merge . . . in a file," (9) "merging . . . in a file," (10) "merging . . . into a document by one or more

computers," (11) "merge . . . in a file," and (12) "creating a file containing . . . by one or more computers."

For these terms and phrases, this Court incorporates its previous analysis. However, for those terms and phrases applicable only to the 748 Patent, the Court will address each in turn.

### i.  Allocating Funds, Allocated Within an Account and Allocate Funds

Plaintiff suggests the following construction for these phrases: "designating for, funding, or otherwise associating funds for payment with, a particular card account." (Doc. # 122 at 21).  According to Plaintiff, such construction uses the ordinary meaning of the term "allocate" together with the PTAB's construction of "funds."[3] (Id. at 22).  However, Plaintiff acknowledges that the PTAB's decision related to the 904 Patent. (Id.). Nonetheless, Plaintiff argues that the PTAB's construction of the term "funds" applies equally to the 748 Patent, which shares the same parent patent and specification as the 904 Patent. (Id.).

However, Defendants note that the term "funding" and other similar terms (e.g., "loading") are used exclusively in

---

[3] The PTAB construed the term "funds" to mean "funds for payment." (Doc. # 122-6 at 14).

the claims of the 904 Patent, whereas the term "allocating" is used exclusively in the claims of the 748 Patent. (Doc. # 127 at 28). Thus, Defendants argue that the patentee, Mr. Allen, has demonstrated a clear distinction between the terms "allocate" and "fund." (Id.).

Although Plaintiff provides the declaration of Mr. Allen to support its position that the terms "allocating" "allocated" and "allocate" in the 748 Patent mean "designating for or otherwise associating with" (same as used in 904 Patent), the Court cannot overlook the fact that different terms were chosen to be used in the 904 Patent and the 748 Patent, even though the Patents share a parent patent. Thus, the Court declines Plaintiff's construction, and instead, the Court agrees with Defendants that these terms should be afforded their ordinary and customary meaning.

The Court's review of the ordinary meaning of "allocate" is to set apart for a particular purpose, assign, or allot. Therefore, the Court finds that giving these phrases their ordinary and customary meaning – as proffered by Defendants – the terms "allocating funds," "allocated within an account," and "allocate funds" should be construed as "to set apart for a particular purpose, assign, or allot."

   ii.   **File**

45

Plaintiff proposes that the proper construction of this term is "one or more related documents." (Doc. # 122 at 23). Plaintiff argues that this construction "is consistent with its ordinary meaning and its use in the 748 Patent," and the term "file" is defined as "a collection of related data records." (Id.)(citing www.merriam-webster.com). However, the Court finds that the phrase "related documents" is ambiguous, and will not assist the trier of fact.

Defendants provide that "[t]he asserted patents are directed to computerized systems and methods for transmitting payment and explanations of benefit to health care providers." (Doc. # 127 at 17). Understanding this, Defendants suggest that the "file . . . term[] should be accorded [its] meaning within that computer context" - "a collection of information, referred to by file name." (Id.).

The 748 Patent specification indicates that the "file" shall contain the following information: (1) stored-value card account number, (2) the adjudicated benefit payment amount, (3) a card verification value code, (4) an expiration date, and (5) the explanation of benefits. (See Doc. # 66-2). Therefore, the Court finds that this term shall be

considered a collection of information, which can be contained in one or more documents.

Thus, combining aspects of both parties' proposed constructions, the Court construes the term "file" as: "one or more documents containing a collection of information, referred to by file name."

### iii. **Sending, Sent, and Send**

According to Defendants, several claims of the 748 Patent require merging stored value card information and explanation of benefits into a file or document "by one or more computers," and subsequently sending that file or document to the health care provider. (Doc. # 151 at 14). As such, pursuant to the plain language of the claims, Defendants provide that the file or document to be "sent" is a computer file or document. (<u>Id.</u>). Thus, in this context, Defendants argue that the terms should be interpreted to likewise require transmission of the file or document by computer means (i.e., electronic transmission). (<u>Id.</u>).

According to Plaintiff, however, none of the claims contained in the 748 Patent require "electronically transmitting" a file or document. (Doc. # 171 at 5). For example, claim 7 of the 748 Patent requires "sending the file to the health care provider," without specifying that the

"sending" be electronic. (Id.). Plaintiff claims that the
same holds true for claim 13 ("the document is sent to the
health care provider as payment for the medical services"),
and claim 25 ("to send the file to the health care provider
as payment for the benefit claim"). (Id. at 5-6). Furthermore,
Plaintiff argues that claim 19 does not even contain a
"sending" or "transmitting" limitation. (Id. at 6). Thus,
Plaintiff suggests that Defendants' citation to the abstracts
and specific embodiments described in Plaintiff's Patents to
support its "electronically transmitting" argument runs afoul
of controlling precedent. (Id. at 5-6).

    While the claims contained in the 748 Patent indicate
that the information is merged into a file or document by one
or more computers, the claim language does not limit how the
information is sent to health care provider; specifically,
the 748 Patent does not use the term "electronically
transmitted." Thus, for this Court to incorporate Defendants'
construction would be to add meaning to the claims that was
not explicitly requested by the patentee. Therefore, the
Court declines to infer that the 748 Patent requires
electronic transmission; especially as the 904 Patent
explicitly requires, at times, "electronic transmission or
sending" of the merged file or document and the 748 does not.

Rather, as set forth above, the Court determines that the terms "sending" and "send" should be accorded their ordinary and customary meaning, and therefore, the Court declines to construe these common, non-technical terms.

### iv.   Stored-Value Card Account

Based on this Court's previous constructions, the Court determines that the ordinary meaning of this term is "a credit card, debit card, or EFT card account."

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff StoneEagle Services, Inc.'s Opening Claim Construction Brief (Doc. # 122) is **GRANTED IN PART.**

(2)   Defendants Pay-Plus Solutions, Inc. and Premier Healthcare Exchange, Inc.'s <u>Markman</u> Motion to Construe Claims (Doc. # 127) is **GRANTED IN PART.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>4th</u> day of June, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record