UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STONEEAGLE SERVICES, INC.,

        Plaintiff,

v.                              Case No.: 8:13-cv-2240-T-33MAP

PAY-PLUS SOLUTIONS, INC., and
PREMIER HEALTHCARE EXCHANGE, INC.,

        Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Plaintiff StoneEagle Services, Inc.'s Amended Motion in Limine to Exclude Defendants' Late-Produced "Referral Agreement" (Doc. # 178) and Defendants Pay-Plus Solutions, Inc. ("PPS") and Premier Healthcare Exchange, Inc.'s ("PHX") Motions in Limine (Doc. # 138). Both Motions are ripe for this Court's review. For the reasons set forth at the Motion hearing conducted on June 17, 2015, and set forth below, the Motions are granted in part and denied in part as detailed herein.

## I.   Background

In this patent infringement action, Plaintiff alleges that Defendants willfully infringed Plaintiff's rights under two patents: Reissue Patent No. US RE43,904 E ("the 904 Patent") and Reissue Patent No. US RE44,748 E ("the 748

Patent"). (Doc. # 66 at ¶¶ 1, 8-10 & Ex. A, B). Both patents cover a health care provider reimbursement system, by which a payor, such as an insurance company, makes "a virtual payment to a medical provider by transmitting a stored-value card account payment of the authorized benefit amount, together with an explanation of benefits." (Id. at ¶¶ 14-16 & Ex. A, B). Plaintiff alleges that Defendants' health care benefits payment processing system, "Pay-Plus™ Select," directly competes with Plaintiff's patented system. (Id. at ¶¶ 17-18). Specifically, Plaintiff "asserts different infringement positions against the Pay-Plus™ Select service: (1) the 'one-fax system' allegedly infringes all of the asserted claims; and (2) the 'two-fax system' and 'hardcopy mailing system' each allegedly infringe claims 7, 13, 19, and 25 of the 748 Patent." (Doc. # 143 at 8).

On December 2, 2014, Defendants filed Answers to the operative complaint, including, as an affirmative defense, a challenge to the validity of the patents pursuant to 35 U.S.C. § 101. (Doc. # 67 at 7; Doc. # 68 at 7). Thereafter, on December 9, 2014, Defendants filed a Motion for Judgment on the Pleadings arguing that the claims at issue are directed to patent-ineligible subject matter under 35 U.S.C. § 101, which warranted judgment in Defendants' favor. (Doc. # 69).

2

This Court denied Defendants' Motion without prejudice, partially as claim construction had not occurred in this action. (See Doc. # 91). This Court held a Markman hearing on May 11, 2015 (Doc. # 183), and entered an Order on claims construction on June 4, 2015. (Doc. # 197).

Now before the Court are the parties' Motions in Limine. (Doc. ## 138, 178). The Court will address each in turn.

## II.   Legal Standard

"A motion in limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial." In re Seroquel Prods. Liab. Litig., Nos. 6:06-md-1769-Orl-22DAB, 6:07-cv-15733-Orl-22DAB, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009). "The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably [a]ffect the fairness of the trial. A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." Id. (internal quotation omitted).

A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or

narrow the issues to be tried.  See LSQ Funding Grp. v. EDS Field Servs., 879 F. Supp. 2d 1320, 1337 (M.D. Fla. 2012) (citing Royal Indem. Co. v. Liberty Mut. Fire Ins. Co., No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008)). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." In re Seroquel, 2009 WL 260989, at *1 (internal quotation marks omitted). "Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." Id. "The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine."  Id.

The district court has broad discretion to determine the admissibility of evidence, and the appellate court will not disturb this Court's judgment absent a clear abuse of discretion. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998); see also United States v. Jernigan, 341 F.3d 1273, 1285 (11th Cir. 2003)("Inherent in this standard is the firm recognition that there are difficult evidentiary rulings that turn on matters uniquely within the purview of the district court, which has first-hand access to documentary evidence

and is physically proximate to testifying witnesses and the jury.").

## III. **Analysis**

### a. **Plaintiff's Motion**

Plaintiff requests that this Court exclude from trial and from any consideration by the Court a Referral Agreement produced by Defendants "well after close of discovery," as well as any testimony, argument or evidence relating to that Referral Agreement. (Doc. # 178 at 1).

According to Plaintiff, although the Referral Agreement was executed by Defendants on January 29, 2015, before the discovery deadline of March 3, 2015, Defendants withheld it from production until after Plaintiff deposed Defendants' corporate representatives (CEOs and CFOs) on February 25-27, 2015, after the discovery deadline, and after the dispositive motion deadline. (Id. at ¶ 3). Plaintiff suspects that the Referral Agreement is a:

> [D]esperate attempt by Defendants to create evidence re-characterizing PHX's sales of, and offers to sell, the Defendants' infringing product as mere "referrals," while avoiding any discovery regarding that attempted re-characterization. By doing so, Defendants seek to bolster their claim that PHX does not sell or offer to sell infringing products and, therefore, does not induce or

contribute to the infringement of Plaintiff's
patents at issue.

(Id. at ¶ 6).

While Defendants contend that they disclosed the
relevant terms of the Referral Agreement, Plaintiff submits
that PPS' designated representative – Mr. Jay Ver Hulst –
denied that any such written document existed during his
deposition on January 19, 2015:

> Q: Is there an agreement between the individuals
> who are compensated for making sales of PPS
> services?
> A: No. "No" being a written agreement.

(Doc. # 185 at 3-4). Because Defendants denied the very
existence of a written Referral Agreement and failed to
produce a copy of the Referral Agreement, Plaintiff contends
that it did not, and could not have, obtained "specific,
detailed testimony regarding the Referral Agreement from both
PPS and PHX witnesses" during the discovery period. (Id. at
4). Specifically, Plaintiff's counsel suggests that he was
hindered from asking a single question about the terms and
conditions of the written Referral Agreement. (Id. at 4-5).
Plaintiff submits that these terms bear on critical issues in
this case. (Id. at 5). Furthermore, without the Referral
Agreement, Plaintiff's counsel did not know when he deposed

Defendants' corporate representatives that the Referral Agreement's express terms contradicted the corporate representative's testimony. (Id.). Therefore, Plaintiff requests that the Referral Agreement be excluded under Fed. R. Civ. P. 37(c)(1). (See Doc. ## 178, 185).

Plaintiff also argues that the Court should exclude the Referral Agreement under Fed. R. Evid. 403, as the Referral Agreement is more prejudicial than probative. (Doc. # 178 at 6). Defendants timely produced "commission reports," which characterized payments by PPS to PHX employees relating to the sales of PPS' products as "commissions." (Id.). According to Plaintiff, the Referral Agreement seeks to re-cast those payments as being for "referrals" not commissions for sales. (Id.). Plaintiff submits that this is an attempt by Defendants to create evidence – that contradicts previously produced documents – to support Defendants' position that PHX does not "sell" or "offer for sale" the allegedly infringing Pay-Plus™ Select system. (Id.). Because the Referral Agreement was created so late in these proceedings and contradicts previously produced documents, Plaintiff asserts that it has little if any probative value relating to the nature of the payments. (Id. at 6-7).

Rule 37(c), Fed. R. Civ. P., generally provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Rule 26(e), Fed. R. Civ. P. states, in relevant part:

(1) In General. A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

Fed. R. Civ. P. 26

As such, if violations of Rule 26 have indeed occurred, a court may preclude the violator from relying on untimely disclosed information unless the violations are "substantially justified" or "harmless." Fed. R. Civ. P. 37(c). "In determining whether the failure to disclose was

justified or harmless, [the Court] consider[s] the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." Lips v. City of Hollywood, 350 F. App'x. 328, 340 (11th Cir. 2009) (citing Romero v. Drummond Co., 552 F.3d 1303, 1321 (11th Cir. 2008)). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." Berryman-Dages v. City of Gainesville, No. 1:10-cv-177-MP-GRJ, 2012 WL 1130074, at *2 (N.D. Fla. Apr. 4, 2012).

At the Motion hearing, Defendants continued to argue against exclusion of the Referral Agreement. However, Defendants' counsel admitted that the Referral Agreement should have been immediately produced, but due to human error, a delay in producing the document occurred.

For the reasons discussed at the Motion hearing, the Court denies Plaintiff's Motion, subject to the resolution described by the parties. Particularly, the parties are to confer regarding scheduling the depositions of Mr. Anthony Vigorito, Mr. Robert Hammer, Mr. Jay Ver Hulst, and Mr. Todd

Roberti. These depositions shall be limited in scope to matters stemming from the relevant Referral Agreement.

Defendants are responsible for costs incurred by Plaintiff's counsel to travel to take these depositions. However, the Court declines to award Plaintiff's counsel attorneys' fees in taking these depositions. In the event the parties are unable to resolve these issues, Plaintiff may renew its Motion for resolution by this Court.

**b. Defendants' Motions**

Defendants request an Order "precluding Plaintiff, Plaintiff's counsel, or any of Plaintiff's witnesses, from mentioning, referring to, or offering any evidence, testimony, or argument relating to the following subjects. . . ." (See Doc. # 138).

**i. Plaintiff Should Be Precluded From Offering Testimony, Evidence, or Argument Regarding Any Allegations of False or Misleading Advertising.**

As this is a patent infringement action, Defendants contend that "testimony, evidence, or argument regarding any other purported torts or wrongdoing by Defendants is irrelevant to the case at hand." (Id. at 8). Further, Defendants suggest that "the probative value of such testimony, evidence, or argument is substantially outweighed

by the danger of unfair prejudice to Defendants and confusion of issues, as to potentially mislead the jury." (Id.).

In particular, Defendants submit that Plaintiff previously sought leave to file its third amended complaint in order to add allegations against Defendants related to false and misleading advertising in violation of Section 43(a) of the Lanham Act. (Id.). "The proposed amendments involved allegations . . . related to Defendants' advertisements across various mediums, including statements on its website regarding Pay-Plus™ Select Plus and statements that its product uses a 'patent pending' process, a 'reloadable card,' and/or has three different versions." (Id.). However, this Court denied Plaintiff's Motion for Leave to Amend. (See Doc. # 104). The Court notes that in its Order on the Motion for Leave to Amend, the Court's analysis was limited to Rule 16(b)(4), Fed. R. Civ. P.: the Court determined – given the procedural posture of this action – Plaintiff failed to provide a sufficient basis for the Court to grant its request. (Id.). The Court did not address the merits of Plaintiff's proposed amendments.

In response to Defendants' current request, Plaintiff argues that Defendants falsely advertised their infringing payment process known as Pay-Plus™ Select. (Doc. # 157 at 4).

Defendants also engaged in a "'bait and switch' scheme by advertising – for over 3 years – a payment system that they could not sell." (Id.). According to Plaintiff, this purported false advertising relates directly to Defendants' infringement of the relevant patents. (Id.). In fact, "the un-contradicted testimony of Defendants' own witnesses establishes that Defendants made various false advertising claims." (Id.). Thus, Plaintiff submits that this testimony is relevant to Defendants' invalidity defenses, damages, and their willful infringement, as well as to rebut Defendants' defense that Plaintiff's patented inventions are obvious and invalid. (Id. at 6).

For the reasons stated on the record at the Motion hearing, the Court denies Defendants' Motion, and as a result, this testimony may be presented at trial. Whether and how Defendants advertised their products is directly related and relevant to the patent infringement claims at issue.

> ### ii. **Plaintiff's Expert Robert Allen Should be Precluded From Offering Opinions or Evidence Regarding Defendants' Highly Confidential Information.**

Plaintiff's expert Robert Allen is also Plaintiff's CEO. (Doc. # 138 at 9). Defendants explain that Mr. Allen is prohibited from accessing information and materials produced

12

by Defendants designated as either "HIGHLY CONFIDENTIAL –
ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – OUTSIDE
COUNSEL ONLY." (Id.). This information is restricted to only
outside counsel, in-house counsel (but only with respect to
the lower designation), professional vendors, the Court, and
independent outside experts. (Id.).

As Mr. Allen does not fit into one of these categories,
his expert report is devoid of opinions or evidence relating
to Defendants' highly confidential information. (Id.).
Therefore, Defendants argue that Mr. Allen should be
precluded from offering any testimony, evidence, or argument
at trial relating to or referring to any of Defendants' highly
confidential information. (Id.).

In response, Plaintiff recognizes the nature of the
documents, but argues that if Defendants choose to use their
highly confidential information at trial, and have their
experts rely on such evidence, then Mr. Allen should be able
to rely on it as well. (Doc. # 157 at 6-7).

Upon consideration, the Court grants Defendants' Motion
in part. To that end, if Defendants introduce this highly
confidential information at trial, and their experts rely on
this information, then Mr. Allen should be allowed to offer
testimony, evidence, and argument at trial related to these

13

matters. However, if Defendants refrain from using this information, then likewise, Mr. Allen should be precluded from offering testimony, or otherwise, on these matters.

### iii. Plaintiff's Damages Expert Should Be Precluded From Offering Opinions or Conclusion Regarding the Georgia-Pacific Factors.

"Upon a showing of infringement, a patentee is entitled to 'damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.'" ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 868 (Fed. Cir. 2010)(quoting 35 U.S.C. § 284). According to Defendants, the Federal Circuit has consistently held that the factors identified in Georgia-Pacific Corp v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), guide the reasonable royalty calculation. (Doc. # 138 at 10).

Plaintiff's damages expert, Mr. Weston Anson, however, "explicitly disclaimed use of the Georgia Pacific factors in his analysis and opinions." (Id.). Instead, Mr. Anson relied on a "Market Approach" to arrive at his reasonable royalty rate. (Id.). "Similarly, at his deposition, Mr. Anson referred to the Georgia Pacific factors as 'outmoded,'" and indicated that they were not appropriate in this case. (Id.

14

at 11). Thus, Defendants argue that Mr. Anson should be precluded from offering opinions or conclusions at trial regarding the Georgia Pacific factors. (Id. at 10-11).

In response, Plaintiff argues that Defendants' rebuttal damages expert critiqued Mr. Anson's decision not to utilize the Georgia Pacific factors. (Doc. # 157 at 7). Thus, Plaintiff contends that Mr. Anson should be able to respond to the opinions of Defendants' rebuttal damages expert, which may include discussion of the Georgia-Pacific factors. (Id.). According to Plaintiff, to preclude him from doing so "would be to permit him to be unfairly attacked without giving the jury an opportunity to hear his response to the criticism of the Defendants' expert." (Id.).

After due consideration, and based on Plaintiff's counsel's representations at the Motion hearing, the Court denies Defendants' Motion. This Court denied Defendants' Motion to Exclude Mr. Anson (Doc. # 144), and determined that Mr. Anson's opinions – which utilized the "Market Approach" as opposed to the Georgia-Pacific factors in determining a reasonable royalty rate in this action – were based on sound and reliable methodology. Mr. Anson should be able to respond to the opinions of Defendants' rebuttal damages expert, which criticize the approach chosen by Mr. Anson. Specifically, Mr.

15

Anson should be able to explain why he chose not to use the Georgia-Pacific factors in his analysis.

### iv. Plaintiff's Damages Expert Should be Precluded from Offering Opinions or Conclusions on Technical Matters.

Under Fed. R. Evid. 702, an expert witness may offer opinion testimony within the expert's area of expertise. Thus, a technical expert is unqualified under Rule 702 when he or she does not possess "relevant expertise in the pertinent area." See Fed. R. Evid. 702; (Doc. # 138 at 11).

Here, Defendants argue that Plaintiff's expert Mr. Anson "possesses no training or experience in the pertinent art of the asserted patents . . . or any related technical field." (Id. at 12). Further, at his deposition, Mr. Anson "admitted that he was not hired in this case as a technical expert." (Id.). Thus, Defendants suggest that Mr. Anson is unqualified to give expert testimony on technical matters such as invalidity, infringement, interpretation of the asserted patents, or other technical matters. (Id.). Furthermore, because Mr. Anson lacks specialized training or knowledge in payment processing systems, Defendants contend that he cannot properly offer opinion testimony on the technical comparability of the subject matter of these license

agreements with the subject matter of the 904 and 748 Patents. (Id. at 12-13).

Plaintiff admits that Mr. Anson is not a technical expert. (Doc. # 157 at 8). However, "[a]s a highly educated individual with extensive licensing experience," Plaintiff asserts that Mr. Anson should be allowed to testify as to why he thinks the technology in the licenses – which he identified in his expert report - is comparable to the technology covered by Plaintiff's patents in suit. (Id.).

For the reasons stated at the Motion hearing, the Court denies Defendants' Motion. To the extent Defendants contend that Mr. Anson is unqualified to give an opinion on certain matters, Defendants can address these concerns on cross-examination.

> ### v. **Plaintiff Should Be Precluded From Offering Testimony, Evidence, or Argument Regarding Plaintiff's Licensing Negotiations.**

Defendants request that the Court preclude Plaintiff from offering testimony, evidence, or argument regarding license negotiations that have taken place between Plaintiff and third parties, which relate to the 904 and 748 Patents, or any related patent, including but not limited to the 686 parent patent, and any documents, materials, and communications that may have been exchanged during the course

of those negotiations. (Doc. # 138 at 13-14). According to Defendants, "[a]ny probative value of such testimony, evidence, or argument is substantially outweighed by the danger of unfair prejudice to Defendants due to Plaintiff's protection of such license negotiations during discovery." (Id. at 14).

Defendants explain that during discovery, "Defendants sought production of documents and information from Plaintiff relating to any licensing negotiations concerning any of the asserted patents or subject matter thereof." (Id.). However, Plaintiff refused to produce the documents and information sought by Defendants because the requested information was (1) not relevant and (2) protected under a confidentiality agreement with a third party. (Id.). Defendants moved to compel the production of the documents and information, which Plaintiff opposed. (Id.). The Court denied Defendants' motion with respect to these requests regarding the licensing negotiations. (See Doc. # 110).

Thus, Defendants argue that "based on its explicit statement of non-relevance and its overall protection of such discovery," Plaintiff should be precluded from offering any testimony (including expert opinions), evidence, or argument

relating to any license negotiations that have taken place between Plaintiff and third parties. (Doc. # 138 at 14).

According to Plaintiff, its counsel previously proposed that neither party should be permitted to offer such evidence, but Defendants refused. (Doc. # 157 at 8). Plaintiff reiterates its proposal – all parties should be precluded from offering such testimony, evidence, or argument. However, the proposal applies to both parties as there is "no reason for Defendants to make any argument or introduce evidence at trial regarding this topic." (Id. at 9). If Defendants do make such argument or offer such evidence, Plaintiff contends that fairness dictates that Plaintiff be permitted to respond in kind with argument and evidence. (Id.).

After hearing the parties' arguments, the Court denies Defendants' Motion without prejudice. At the Motion hearing, Defendants failed to provide sufficient information on exactly what testimony they sought to exclude. Defendants may renew this Motion at trial, if appropriate, once the Court has the benefit of hearing the testimony in trial context.

> vi. **Plaintiff Should Be Precluded From Offering Testimony, Evidence, or Argument Regarding Design, Operation, or Success of Plaintiff's Own Product.**

Defendants request the Court preclude Plaintiff from offering testimony, evidence, or argument regarding Plaintiff's products, such as the design, operation, and capabilities of Plaintiff's products or associated sales or revenue data. (Doc. # 138 at 15). According to Defendants, Plaintiff "intentionally withheld such information during discovery." (Id.). As such, "[g]iven Plaintiff's failure to provide this information requested by Defendants under Federal Rule of Civil Procedure 26, Plaintiff is not allowed to use this information at trial under Federal Rule of Civil Procedure 37(c)(1)." (Id. at 16).

At the Motion hearing, the parties agreed that a limiting instruction at trial would be appropriate under the circumstances; specifically, so that the jury does not consider testimony of (1) Plaintiff's commercial success of its products and (2) its finances for "secondary considerations of non-obviousness based on commercial success." (Doc. # 200). However, the Court finds that Plaintiff should be allowed to explain its product (design and capabilities), as this information is directly related to the patent infringement claims at issue. Accordingly, the Court denies Defendants' Motion.

### vii. **Plaintiff Should be Precluded From Offering Testimony, Evidence, or Argument Regarding the Post-Issuance Decisions From the Patent Office Regarding the 904 Patent.**

Defendants suggest that Plaintiff should be precluded – under Fed. R. Evid. 401, 402, and/or 403 – from offering evidence, testimony, or argument regarding (1) the PTAB's decision denying Defendants' petition for Inter Partes Review with respect to the 904 Patent and (2) the PTAB's decision denying Covered Business Method Patent Review (CBM) with respect to the 904 Patent. (Doc. # 138 at 19). According to Defendants, these procedures "have distinctly different standards, parties, purposes, and outcomes compared to civil litigation." (Id. at 18)(quoting In re Swanson, 540 F.3d 1368, 1377 (Fed. Cir. 2008)). Accordingly, "different results between those forums and the current forum may be entirely reasonable." (Id.)(quoting Ethicon, Inc. v. Quiqg, 849 F. 2d 1422, 1428 (Fed. Cir. 1998)). Therefore, Defendants argue that this evidence is irrelevant and highly prejudicial to the jury's determination. (Id. at 19-20).

Defendants suggest that "numerous district courts have [ ] excluded testimony, evidence, and argument regarding Patent Office proceedings – a predecessor to the new IPR and CBM proceedings." (Id. at 18-20)(citing Ultratec, Inc. v.

Sorenson Comm'ns, Inc., No. 13-cv-346-bbc, 2014 WL 5023098, at *2 (W.D. Wis. Oct. 8, 2014); Belden Techs., Inc. v. Superior Essex Commc'ns, LP, 802 F. Supp. 2d 555, 569 (D. Del. 2011); Server Tech., Inc. v. Am. Power Conversion Corp., No. 3:06-cv-698-LRH, 2014 WL 1308617, at *4 (D. Nev. Mar. 31, 2014); Personalized User Model, L.L.P. v. Google, Inc., No. 9-525-LPS, 2014 WL 807736, at *3 (D. Del Feb. 27, 2014); Interdigital Commc'ns, Inc. v. Nokia Corp., No. 13-10-RGA, 2014 WL 8104167, at *1 (D. Del. Sept. 19, 2014)(excluding evidence regarding a similar PTAB decision denying IPR review in view of the "marginal relevance" and "significant risk of confusion of the issues.")).

According to Plaintiff, the cases relied upon by Defendants are inapplicable to the present circumstances. (Doc. # 157 at 12). Furthermore, unlike the situation in Interdigital Comm., Inc. v. Nokia, Corp., 690 F.3d 1318 (Fed. Cir. 2012), the petition for Inter Partes Review of the 904 Patent was instituted by Defendant Pay-Plus Solutions, Inc. and the PTAB expressly concluded in its decision "Petitioner fails to demonstrate a reasonable likelihood of prevailing in showing the un-patentability of any of the challenged claims." (Id.). Therefore, Plaintiff submits that no basis

exists to hide the results of the three contested proceedings from the jury. (Id.).

Upon consideration of the parties' arguments and based on Plaintiff's counsel's representations, the Court denies Defendant's Motion. The Court can and will instruct the jury on the appropriate law to apply to this case and can, if requested, further instruct the jury that different standards apply to these various proceedings (i.e., the PTAB's decision denying Defendants' petition for Inter Partes Review with respect to the 904 Patent and the PTAB's decision denying Covered Business Method Patent Review with respect to the 904 Patent). The Court directs the parties to work together to formulate a specific joint instruction on these particular matters.

### viii. **Plaintiff Should be Precluded From Offering Testimony, Evidence, or Argument Asserting That the Reissued Nature of the Asserted Patents or the Post Issuance Decisions From the Patent Office Strengthen the Presumption of Validity of the Asserted Patents.**

Defendants seek to exclude any one-sided evidence, testimony, or argument that suggests that the U.S. Patent Office is "infallible," as its probative value is substantially outweighed by the danger of unfair prejudice to the Defendants. (Doc. # 138 at 20-21). In particular,

Defendants seek exclusion of any reference or suggestion that (1) the "reissue" nature of the 904 and 748 Patents, (2) the PTAB's decision denying Defendants' petition for Inter Partes Review with respect to the 904 Patent and (3) the PTAB's decision denying Covered Business Method Patent Review with respect to the 904 Patent strengthens the presumption of validity with respect to either asserted patent. (Id.).

According to Plaintiff, to the extent Defendants seek a ruling prohibiting Plaintiff from presenting "any one-sided evidence, testimony, or argument that suggests that the US Patent Office is infallible," Plaintiff claims it has never suggested any intent to offer this kind of evidence. (Doc. # 157 at 13). However, Plaintiff's counsel indicated that this "odd and vague" request leads it to "guess what can be said and not be said about Plaintiff's patents." (Id.).

For the reasons set forth at the Motion hearing; specifically, based on Plaintiff's counsel's representations on this matter, the Court denies Defendants' Motion without prejudice. Defendants may renew this request at trial, if appropriate.

ix. **Plaintiff Should be Precluded From Offering Testimony, Evidence, or Argument Regarding Willful Infringement Based on Defendants' Knowledge of the 686 Patent.**

Here, Defendants contend that Plaintiff's allegations of willful infringement are based at least in part on Defendants' alleged knowledge of the 686 parent patent. (Doc. # 138 at 24). Defendants state that, pursuant to 35 U.S.C. § 251, the 686 patent was "'surrendered' upon issuance of the reissue patents, further evidencing the lack of notice." (Id.). Further, under 35 U.S.C. § 252, the two reissued patents have "the same effect and operation in law . . . as if [they] had been originally granted" only if "the claims of the original patent and reissued patents are substantially identical. . . ." (Id.). With the exception of claim 2 of the 904 Patent, Defendants claim that the claims of the 904 and 748 Patents are not "substantially identical" to the original claims of the 686 patent. (Id.).

In light of this, Defendants argue that Plaintiff should be precluded from offering testimony, evidence, or argument regarding willful infringement based on Defendants' alleged knowledge of the 686 patent for any newly added claim to either the 904 or 748 Patent. (Id. at 25). Namely, Defendants suggest that their knowledge of the now surrendered 686 patent is irrelevant to Plaintiff's claim of willful infringement, which requires actual knowledge of the 904 and 748 Patents. (Id.). Also, the probative value of such testimony, evidence,

or argument is substantially outweighed by the danger of unfair prejudice to Defendants and confusion of issues, as to potentially mislead the jury. (Id.).

In response, Plaintiff points to the issue raised by Defendants – what must Defendants have known about when they began their infringement for it to be willful? (Doc. # 157 at 14). Defendants suggest that the answer is the asserted patent. (Id.). Even if true, Plaintiff argues that Defendants attempt to "brush" past the fact that they did have knowledge of the asserted patent. (Id.). Namely, Defendants admit that claim 2 of the 904 Patent remained after the 686 patent reissued, and it is not a newly added claim. (Id. at 8).

Upon review, the Court denies Defendants' Motion. In order to willfully infringe a patent, the alleged infringer must know of the patent. i4i Ltd. P'ship. v. Microsoft Corp., 598 F.3d 831, 860 (Fed. Cir. 2010) ("Infringement is willful when the infringer was aware of the asserted patent, but nonetheless 'acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.'"); Pandora Jewelry LLC v. Cappola Capital Corp., No. 8:06-cv-845-T-24MSS, 2009 WL 2029964, *1 (M.D. Fla. 2009) (holding that knowledge of the patent is required for willful infringement).

26

Plaintiff should be allowed to provide testimony regarding whether Defendants had the requisite knowledge of the 686 patent to establish willful infringement, and Defendants can then provide testimony of a potential good faith defense. Furthermore, if appropriate, the Court can, if requested, apply a limiting instruction regarding what is necessary to find willful infringement.

### x. **Plaintiff Should be Precluded From Offering Testimony, Evidence, or Argument Regarding Prior Convictions (or Related Acts) of Mr. Todd Roberti, CEO of Defendant Premier Healthcare Exchange Inc.**

In the mid-1990s, Mr. Todd Roberti – the CEO of PHX – pled guilty to criminal counts related to securities violations. (Doc. # 138 at 25). Defendants suggest that these criminal convictions are generally inadmissible pursuant to Fed. R. Evid. 404, and are irrelevant to this case. (Id.). To begin, Defendants argue that the underlying acts occurred nearly 20 years ago. (Id.). Additionally, "neither the criminal counts nor the securities violations had any relationship to the issues in this case." (Id.). Thus, Defendants provide that any probative value of the convictions or violations is substantially outweighed by the danger of unfair prejudice to Defendants. (Id.).

Furthermore, to the extent Defendants call Mr. Roberti as a witness, Defendants request that Plaintiff be precluded from impeaching Mr. Roberti with evidence of his criminal conviction. (Id.). Pursuant to Fed. R. Evid. 609(b), a party's attack of a witness' character for truthfulness by evidence of a criminal conviction is limited "if more than 10 years have passed since the witness's conviction." (Id.). In that instance, evidence of the conviction is only admissible if "its probative value . . . substantially outweighs its prejudicial effect." (Id.). Here, Defendants posit that more than 10 years have passed since the conviction, and the probative value of the conviction, which has nothing to do with the merits of this case, does not substantially outweigh its prejudicial effect. (Id.). Thus, given Mr. Roberti's position as CEO of PHX, Defendants claim that any probative value of the conviction for impeachment purposes is substantially outweighed by its prejudicial effect and the risk of jury confusion as to the purpose of such testimony. (Id. at 26-27).

In contrast, however, Plaintiff argues that Mr. Roberti's criminal activity – and its ongoing financial consequences during the period of infringement – are relevant to this case. (Doc. # 157 at 15). While Mr. Roberti was acting

28

as PHX's CEO and Defendants' alleged willful infringement was occurring, Mr. Roberti still owed over $1 million as restitution for his criminal acts. (Id.). Also, the order directing such restitution was entered in 2006, less than 10 years ago. (Id.). Further, Plaintiff contends that Mr. Roberti remains a majority shareholder of PHX, directs the activities of PHX, and PPS is a wholly-owned subsidiary of PHX. (Id.). To the extent that any prejudice exists, Plaintiff argues that it is a result of Mr. Roberti's decisions to engage in criminal activity, not by the argument and evidence regarding his claims. (Id. at 15-16).

Pursuant to Fed. R. Evid. 609(b)

(b) Limit on Using the Evidence After 10 Years. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

**(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and**

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Fed. R. Evid. 609(b)(emphasis added).

At the Motion hearing, Plaintiff's counsel argued that Mr. Roberti's criminal conviction should be admitted as (1) the conviction occurred only twelve years ago (2003) and (2) Mr. Roberti is subject to a restitution order that was entered in 2006. However, when the Court inquired as to whether Plaintiff's counsel had any legal authority allowing the Court to admit a twelve-year-old conviction, under the circumstances, Plaintiff failed to provide such authority. Furthermore, Plaintiff failed to sufficiently demonstrate how the probative value of Mr. Roberti's conviction substantially outweighs its prejudicial effect. Therefore, upon review, the Court grants Defendants' Motion. See United States v. Cathey, 591 F.2d 268 (5th Cir. 1979)("The rule which allows the use of prior convictions more than ten years old in some circumstances establishes a presumption against the use of convictions over ten years old.").

### xi. **Parties Should be Precluded From Making Reference to any Prior Rulings by This Court.**

Defendants argue that the parties should be precluded from referring to any prior briefings or any rulings of this Court, including denial of any motion for summary judgment or any aspect of the claim construction briefing, except to the extent necessary to present the Court's ordered claim

constructions to the jury. (Doc. # 138 at 27). According to Defendants, these prior briefings and rulings on legal matters are irrelevant to the jury's fact finding process, and reference to such rulings creates potential for prejudice and jury confusion. (Id.). Thus, any reference to the Court's prior rulings, other than on claim construction, should be precluded under Fed. R. Evid. 402 and 403. (Id.).

Plaintiff agrees to Defendants' request with one caveat – the parties may refer to such rulings, for purposes of impeachment. According to Plaintiff, such caveat ensures that none of the witnesses seeks to mislead the jury regarding the knowledge of what has happened while this case has been pending. (Doc. # 157 at 16). At the Motion hearing, Defendants' counsel accepted Plaintiff's caveat and suggested that this Court deny the Motion, subject to renewal at trial by way of objection, if appropriate. For these reasons, the Court denies Defendants' Motion.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff's Amended Motion in Limine to Exclude Defendants' Late-Produced "Referral Agreement" (Doc. # 178) is **DENIED** as set forth herein.

(2)   Defendants' Motions in Limine (Doc. # 138) **are GRANTED**

**IN PART AND DENIED IN PART.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this

<u>19th</u> day of June, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record