UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STONEEAGLE SERVICES, INC.,

      Plaintiff,

v.                              Case No.: 8:13-cv-2240-T-33MAP

PAY-PLUS SOLUTIONS, INC., and
PREMIER HEALTHCARE EXCHANGE, INC.,

      Defendants.
_____/

**ORDER**

    This matter comes before the Court pursuant to Defendants Pay-Plus Solutions, Inc. ("PPS") and Premier Healthcare Exchange, Inc.'s ("PHX") Dispositive Motion for Summary Judgment (Doc. # 123), filed on March 20, 2015. Plaintiff StoneEagle Services, Inc. filed a response in opposition to the Motion on April 20, 2015. (Doc. # 156). Thereafter, Defendants filed a reply in support of their Motion on May 4, 2015. (Doc. # 168). For the reasons set forth below, the Motion is denied.[1]

_____

[1] Although Defendants' Motion was filed under seal (Doc. # 143), the Court declines to file the present Order under seal. "The operations of the courts and the judicial conduct of judges are matters of utmost public concern and the common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." Romero v. Drummond

I.    **Factual Background**

Plaintiff initiated this patent infringement action on August 29, 2013, filed an Amended Complaint on February 7, 2014, and thereafter filed a Second Amended Complaint on November 20, 2014. (Doc. ## 1, 28, 66). Plaintiff alleges that Defendants willfully infringed Plaintiff's rights under two patents: Reissue Patent No. US RE43,904 E ("the 904 Patent"), which has twenty-six claims and was issued on January 1, 2013, and Reissue Patent No. US RE44,748 E ("the 748 Patent"), which has thirty claims and was issued on February 4, 2014. (Doc. # 66 at ¶¶ 1, 8-10 & Ex. A, B). These patents are reissue patents of U.S. Patent No. 7,792,686 ("the 686 Patent"), which was issued on September 7, 2010. (Doc. # 143 at 5; Doc. # 156 at 5).

Traditionally, "health insurers paid medical service providers by mailing checks with an explanation of benefits ('EOB')." (Doc. # 156 at 5). In doing so, insurers incurred "significant expenses" printing and mailing these checks and EOBs to health care providers. (Id.). However, "[a] small percentage of payments were made by insurers via an automatic clearing house ('ACH') direct deposit." (Id.). According to

Co., 480 F.3d 1234, 1245 (11th Cir. 2007)(internal citations omitted).

Plaintiff, "[a]t the time of the patent application giving rise to [Plaintiff's] Patents, ACH payments were disassociated from the EOBs, making ACH payments less desirable to providers due to reconciliation issues." (Id.).

The relevant Patents cover a health care provider reimbursement system, by which a payor, such as an insurance company, makes "a virtual payment to a medical provider by transmitting a stored-value card account payment of the authorized benefit amount, together with an [EOB]." (Doc. # 66 at ¶¶ 14-16 & Ex. A, B). According to the Patents' abstracts, the disclosed method is an improvement over the prior art. (Id.).

In discussing this prior art, "the [P]atents explain that, in handling a health care provider's claim for services rendered to a patient, a payer 'generates an [EOB] and a check for the benefit payment,'" which "are then sent concurrently to the health care provider[]." (Doc. # 143 at 6)(citing Doc. # 66 at Ex. A, B). The cited "drawbacks" of the prior art are "the cost and time associated with generating hardcopy checks and sending them by mail to [a] health care provider[]."(Id.). The Patents seek to "'reduce this transactional cost and speed up payment of benefits to health care providers' by

electronically transmitting a file containing the payment and [EOBs]." (Id.).

Plaintiff alleges that Defendants' health care benefits payment processing system, "Pay-Plus™ Select" directly competes with Plaintiff's patented system. (Doc. # 66 at ¶¶ 17-18). Namely, Plaintiff has asserted infringement of claims 2, 7, 12, 17, and 22 of the 904 Patent and claims 7, 13, 19, and 25 of the 748 Patent. (Id.).

The accused Pay-Plus™ Select system is a "health care payment service used to deliver EOBs and payment information to health care providers." (Doc. # 143 at 7). Defendants explain that several companies in addition to PPS are involved in performing aspects of Pay-Plus™ Select: "(1) UMB Bank is the issuing bank for Pay-Plus™ Select card payments; (2) StoreFinancial is the card processor for UMB Bank; (3) MasterCard provides the credit card[;] and (4) InterFAX is a faxing service that transmits EOB faxes and payment faxes to health care providers." (Id.).

Since Pay-Plus™ Select's introduction into the market in February of 2012, three versions of the product have been used. (Id.)(citing Doc. # 143-3 at ¶¶ 5-8). Initially, the EOB and payment information were transmitted to providers in one multi-page fax transmission (the "one-fax system").

4

(Id.). Then, on October 10, 2013, "StoreFinancial implemented a modification to its software to generate two separate files for transmission to health care providers in two separate fax transmissions: one file contains an EOB and a second file contains the card payment information (the 'two-fax system')." (Id.). In particular:

> PPS provides EOB and payee information to StoreFinancial in two separate files. StoreFinancial generates the card payment information (e.g., card number, etc.) and creates two separate PDF files, one containing the EOB and another containing the card payment information. StoreFinancial then transmits the separate PDF files to InterFAX, which in turn faxes the separate files to the provider as two separate fax transmissions.

(Id. at 8). In 2014, PPS also began transmitting EOB and card payment information by mail to some providers (the "hardcopy mailing system"). (Id. at 7-8).

According to Defendants, in all three versions, "PPS has always provided, and continues to provide, StoreFinancial two separate files: one file containing payment information, and a second file containing the information necessary to generate the EOB." (Id. at 7). Further, Defendants assert that in each version, "PPS has always received information about claim payments to be paid directly from the

5

administrator or payer, instead of obtaining such information from a transmittal made by a payer/administrator to a provider." (Id. at 8).

According to the expert report of the Patent's creator – Mr. Robert Allen - (1) the "one-fax system" allegedly infringes all of the asserted claims and (2) the "two fax system" and "hardcopy mailing system" each allegedly infringes claims 7, 13, 19, and 25 of the 748 Patent. (Id.).

## II.   Procedural Background

On December 2, 2014, Defendants filed Answers to the operative complaint, including, as an affirmative defense, a challenge to the validity of the Patents pursuant to 35 U.S.C. § 101. (Doc. # 67 at 7; Doc. # 68 at 7). Thereafter, on December 9, 2014, Defendants filed a Motion for Judgment on the Pleadings arguing that the claims at issue are directed to patent-ineligible subject matter under 35 U.S.C. § 101, which warranted judgment in Defendants' favor. (Doc. # 69). This Court denied Defendants' Motion without prejudice, partially as claim construction had not occurred in this action. (See Doc. # 91).

On March 4, 2015, the Patent Trial and Appeal Board ("PTAB") denied PPS' Petition to institute *inter partes* review of the 904 Patent. (See Doc. # 112). PPS' Petition to

6

institute *inter partes* review of the 748 Patent – filed on January 14, 2015 – is still pending with the PTAB, and according to the parties' Joint Status Report, the PTAB's decision as it relates to the 748 Patent will likely be issued no later than August 7, 2015. (See Id.).

This Court held a Markman hearing on May 11, 2015 (Doc. # 183), and entered an Order on claim construction on June 4, 2015. (Doc. # 197). Thereafter, on June 17, 2015, the Court held a hearing on the parties' Daubert Motions and various Motions in Limine. (Doc. ## 128, 138, 144, 178). The Court entered an Order on the Motions on June 19, 2015, wherein the Court denied both Daubert Motions. (Doc. ## 201-202). Defendants filed the present Motion for Summary Judgment on March 20, 2015 (Doc. # 123), which is ripe for this Court's review.

## III. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the

non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

## IV. <u>Analysis</u>

### a. <u>Exhibit 2 of Defendants' Motion</u>

To begin, the Court addresses Plaintiff's request that Exhibit 2 of Defendants' Motion be stricken. (Doc. # 156 at 9). Exhibit 2 is a "survey" of district court decisions "wherein challenges to one or more patent claims were raised in view of [<u>Alice Corporation Pty. Ltd. v. CLS Bank International</u>, 134 S. Ct. 2347 (2014)] and decided on the merits." (Doc. # 143-2).

Plaintiff suggests that such material should have been included within the Motion, and if it was, Defendants' Motion would "have greatly exceeded the Court's page limitation." (Doc. # 156 at 9); see Local Rule 3.01(a), M.D. Fla. However, Defendants counter that Exhibit 2 "does not amount to argument that should be included in the body of Defendants' Motion." (Doc. # 168 at 3). Rather, Exhibit 2 merely "catalogues relevant district court decisions wherein challenges to one or more patent claims were raised in view of Alice and decided on the merits." (Id.). The Court agrees with Defendants.

Upon review, Exhibit 2 is simply a compilation of patent case law decided under Alice, which was set forth to aid this Court in its determination as to patentability of the relevant claims. Such "catalogue" does not need to be contained within Defendants' Motion, as many of the cases cited were expounded upon in the Motion and others support Plaintiff's position. Therefore, the Court denies Plaintiff's request.

### b. Invalidity of Patent Claims

Defendants move for summary judgment of invalidity of claims 2, 7, 12, 17, and 22 of the 904 Patent and claims 7, 13, 19, and 25 of the 748 Patent "because they are directed to patent ineligible subject matter under 35 U.S.C. § 101." (Doc. # 143 at 5).

The issue of patent-eligibility under 35 U.S.C. § 101 presents a question of law. Accenture Global Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). Because each claim of a patent is presumed valid, Defendants bear the burden of establishing invalidity by "clear and convincing evidence." 35 U.S.C. § 282(a); CLS Bank Int'l v. Alice Corp. Pty. Ltd., 717 F.3d 1269, 1284 (Fed. Cir. 2013) (finding that "any attack on an issued patent based on a challenge to eligibility of the subject matter must be proven by clear and convincing evidence.").

Pursuant to 35 U.S.C. § 101:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.

35 U.S.C. § 101 sets forth four categories of inventions or discoveries that are eligible for patent protection: "processes, machines, manufactures, and compositions of matter." Bilski v. Kappos, 561 U.S. 593, 601 (2010). Supreme Court precedent provides three exceptions to § 101's broad coverage: "laws of nature, natural phenomena, and abstract

ideas" are not patent-eligible. Id. (internal quotation marks omitted).

In order to determine whether subject matter is patent eligible under § 101, the first question is whether the claims at issue are directed to "patent-ineligible concepts." Alice Corp. Pty. Ltd., 134 S. Ct. at 2355. If so, the next question is whether the elements of each claim, considered both individually and in combination, contain an "inventive concept," sufficient to transform the claims into a patent eligible application. Id.

A claimed process contains the requisite "inventive concept" if the process comprises more than "well-understood, routine, conventional activity" previously engaged in by the scientific community. Mayo Collaborative Servs. v. Prometheus Labs. Inc., 132 S. Ct. 1289, 1298 (2012). Limiting the use of an abstract idea to a "particular technological environment," or using "a generic computer to perform generic computer functions" is not sufficient to transform an abstract idea into a patent eligible process. Id. at 1297, 1301 (internal quotation marks omitted). On the other hand, improving an existing technological process may transform a process into an inventive application. Alice Corp. Pty. Ltd., 134 S. Ct. at 2358. For instance, an abstract idea may be integrated

into a new combination of steps, in a way that is unconventional in the field. <u>Mayo</u>, 132 S. Ct. at 1298-00.

The present case involves Patents that are claimed to be "processes" under 35 U.S.C. § 101. Section 100(b) defines "process" as: "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b).

Defendants have set forth numerous arguments to demonstrate how the claims at issue embody an unpatentable abstract idea. (<u>See</u> Doc. # 143)(citing <u>Alice</u>, 134 S. Ct. at 2347 (abstract idea of intermediated settlement in financial transactions); <u>Bilski</u>, 561 U.S. at 593 (abstract idea of hedging against the risk of price fluctuations); <u>Ultramerical, Inc.</u>, 772 F.3d at 709 (abstract idea of using advertising as an exchange or currency); <u>Accenture Global Servs. GmbH</u>, 728 F.3d at 1336 (abstract idea of generating insurance policy-related tasks); <u>Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.</u>, No. 8:11-cv-2826-T-23TBM, 2014 WL 4540319, at *4 (M.D. Fla. Sept. 11, 2014)(abstract idea of incremental savings from financial transactions)).

The Court will address each of Defendants' arguments in turn. However, upon consideration of the parties' contentions and the legal authority on this matter, the Court determines

that the asserted claims of the 904 and 748 Patents clear the
§ 101 hurdle.

### i. **Whether Claims Address Long Standing, Routine Practice in Commerce**

To begin, Defendants argue that both Patents describe an
unpatentable abstract idea, and all the asserted claims
embody the "same basic concept;" specifically: "(i) obtaining
or generating an [EOB] and corresponding payment, (ii)
combining (or merging) the [EOB and payment information] into
a single file, and (iii) transmitting the combined file to a
health care provider." (Doc. # 143 at 10-14).

According to Defendants, "the abstract idea of paying a
service provider using a financial instrument and
accompanying that payment with an explanation of what parts
of the bill the payer did or did not pay, and why, has long
been a fundamental economic practice present in our system of
commerce." (Id. at 15). To that end, Defendants describe that
traditionally, insurers in the health care industry printed
checks and EOB forms that were then together sent to the
health care provider by physical mail. (Id. at 11). The
Patents seek to eliminate "the cost and time associated with
generating hardcopy checks and sending them by mail to [the]
health care provider[]." (Id.).

14

To "reduce this transactional cost and speed up payment of benefits," Defendants explain that the Patents provide for sending the information contained on a stored value card as the payment means and EOB in a single file by facsimile or other electronic means, as opposed to physical mail. (Id.). As such, Defendants proffer that the Patents "teach nothing more than computerizing the combined transmission of a payment means and an explanation of the payment, given the advent of modern technology." (Id.). According to Defendants, "[s]uch computerization of a fundamental business method is the precise subject matter held not eligible for patent protection." (Id.).

To support this position, Defendants point to the expert report of Mr. Thomas Turi. (See Doc. # 128-1). Mr. Turi analyzes and provides an overview of prior art in an attempt to demonstrate how the claims are focused on patent ineligible materials. (Id.). Specifically, Mr. Turi argues that the claims are "obvious" when read in light of these prior arts.[2] (Id.).

---

[2] Mr. Turi analyzes the following: U.S. Patent Application Publication No. 2007/0005403 (Kennedy); U.S. Patent No. 5,991,750 (Watson); press release entitled Viewpoint & Performance Collaborate to Provide Image Statement Products (Image Statement Products); Purchasing Credit Cards Introduction by LeRoy H. Graw (vPayment Interview); U.S.

Furthermore, Defendants submit that Plaintiff often refers to the "stored-value card account payment" form as a "Virtual Card." (Doc. # 143 at 11). But, not only does the patentee – Mr. Robert Allen – admit that he did not invent this "virtual card" (Doc. # 168 at 7), Defendants provide that this "Virtual Card" is "nothing more than a computer file containing information found on a physical credit or debit card." (Doc. # 143 at 11). Likewise, Mr. Turi opines that the stored-value card is just another alternative format to facilitate the movement of funds from one entity to another. (Doc. # 128-1).

Regardless, Defendants contend that "the act of placing information that is otherwise found on the face of a physical credit card into a computer file to permit the electronic transmission of that same information does not alter the fundamental, abstract nature of the claims." (Id. at 11-12)(citing Alice, 134 S. Ct. at 2356 (finding that the abstract concept of "intermediated settlement" to be a fundamental economic practice long prevalent in our system of commerce); Bilski, 561 U.S. at 611-12 (noting that "[h]edging

---

Patent Application Publication No. US 2005/0209964 (Allen); US Patent No. 6,901,387 (Wells); and U.S. Patent Application Publication No. 2006/106650 (Bush). (See Doc. # 128-1).

is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class."); Every Penny Counts, Inc., 2014 WL 4540319, at *4 (invalidating patent claims directed to abstract ideas that are implemented by "well-understood, routine, conventional activities previously known to the industry.")). Therefore, Defendants submit that "the highly generalized claims of the Patents merely articulate a fundamental economic concept in steps specific to processes used in the health insurance field in light of modern technology." (Doc. # 143 at 12).

In its response, Plaintiff proffers that Defendants have failed to provide evidence supporting their assertion that Plaintiff's Patents claim "an abstract, long-standing, 'fundamental economic practice.'" (Doc. # 156 at 11-12). To that end, Plaintiff submits that before the 686 Patent issued, health insurers incurred time and expense generating and delivering physical checks along with EOBs to pay health care claims. (Id. at 12). The Patents "integrate and send a uniquely-generated stored-value card payment with a corresponding EOB in a new process superior to the traditional method of paying health care claims." (Id.). By doing so, Plaintiff argues that the Patents "produce advantages over the prior art for reconciliation, security, and

17

administration[,] and do so at a dramatically lower cost." (Id.).

Plaintiff recognizes that, in order to support their position, Defendants reference the 904 Patent's discussion of a prior art's use of physical checks sent with EOBs. (Id.). However, Plaintiff points out that the Patents do not concern payments made via a physical check. (Id.). In contrast, Plaintiff's asserted claims cover payments: "(a) for only medical benefits, (b) on behalf of only a third party payer (not patients), (c) using only a stored-value card account, (d) funded only with an amount equal to the approved benefit amount, [(e)] made via sending four specified types of payment information combined with an EOB." (Id. at 13). Therefore, it is Plaintiff's position that the asserted claims are in no way a mere "abstract idea" and do not "merely computerize" anything done before. (Id.).

Upon review of the parties' arguments and legal authority on this matter, the Court finds that the claims do not embody an abstract idea, but, rather involve patentable subject matter. The Court finds that this action is analogous to DDR Holdings, LLC v. Hotels.com, 773 F.3d 1245 (Fed. Cir. 2014). The court there upheld a patent in which the "claims address[] the problem of retaining website visitors that, if

18

adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink." 773 F.3d at 1257. Finding that the patent satisfied 35 U.S.C. § 101, the Federal Circuit stated that the patent "do[es] not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." Id. at 1258. Rather, the Federal Circuit found that "the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." Id. In other words, no "pre-Internet analog of the patent's asserted claims" exists because the problem addressed by the claims is unique to "the realm of computer networks." Id. at 1257-58.

Here, the Patents' background sections state:

Third party administrators, insurance companies, and large self-funded corporations (herein "Payers") adjudicate claims, compare them to the benefit plan and make the decision to write checks in payment for the claims. Currently, Payers are required to print checks and explanation of benefit (EOB) forms for delivery to the health care providers. The EOB lists the amount the health care provider billed the Payer's company and the amount the Payer's company paid on the claim. It may also list the contractual discount amount and the

19

patient responsibility. If the claim is denied, the EOB will explain the reason for denial. It has been estimated that the check and EOB forms cost Payers approximately $4.50 each.

[The] This creates inefficiencies [to] for all Payers that must coordinate payment for medical services[. This includes], including, but [is] not limited to, insurance carriers, government entities, and non-profit organizations.

**A long-felt but unfulfilled need in the art is a system to reduce the transactional cost incurred by the payers and speed up the delivery and funding of payments by weeks.**

(Doc. # 66 at Ex. A, B)(emphasis added). The claims at issue seek to address a problem uniquely within the health care industry: "to reduce the cost and time associated with generating hard copy checks and sending them by mail to [a] health care provider[]." (Id.).

Here, it is true that the claims are similar to the prior art discussed in detail by Defendants and Mr. Turi. (See Doc. # 128-1). But, the relevant claims stand apart because (1) the claims are different enough in substance from the prior art and (2) the claims do not merely recite the performance of some prior art business practice. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm

of the health care industry. (See Doc. # 156 at 5). Likewise, the claims do not "simply instruct the practitioner to implement [an] abstract idea with routine, conventional activity." See Ultramercial, Inc., 772 F.3d at 715.

In his report, Mr. Turi admits that there is nothing in the various prior art (i.e., vPayment Interview) that would have precluded the prior art from being used in the health care industry; however, these prior art systems were admittedly not implemented. (Doc. # 128-1). Therefore, while the concept may have been "obvious," as suggested by Defendants and Mr. Turi, the precise practice at issue did not exist prior to the Patents being issued.

Like the claims in DDR Holdings, LLC, the asserted claims "do not recite an invention as technologically complex as an improved, particularized method" of payment systems. See DDR Holdings, LLC, 773 F.3d at 1259. However, the relevant claims do not simply recite "a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations." Id. Therefore, even with Mr. Turi's thorough analysis of the prior art, the Court finds that Defendants

have not provided clear and convincing evidence to establish that the prior arts engaged in the practice implemented by the Patents or that the claims at issue involve a fundamental economic practice, thus making them unpatentable subject matter. See Biosig Instruments, Inc. v. Nautilus, Inc., 783 F.3d 1374, 1377 (Fed. Cir. 2015)("A patent is presumed valid under 35 U.S.C. § 282 and, consistent with that principle, a [fact finder is] instructed to evaluate . . . whether an invalidity defense has been proved by clear and convincing evidence.")(internal quotations omitted).

### ii. Whether Patents are Directed at Solving a Problem or Shortcoming

In addition, Defendants provide that the Patents are "not directed at solving any particular computer, network, or Internet technology problems or shortcomings." (Doc. # 168 at 9). Instead, Defendants argue that Plaintiff's Patents essentially "recite the performance of some business practice known from the [pre-computer] world along with the requirement to perform it on [a computer]," which is subject matter that would not survive under an Alice analysis. (Id.)(citing Alice, 134 S. Ct. 2347 ("recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").

However, this Court finds that the relevant claims do not broadly and generically claim the use of stored-value cards to perform an abstract business practice. Rather, the claims at issue specify how interactions with these stored-value cards are manipulated to yield a desired result – "reduce this transactional cost and speed up payment of benefits to health care providers by electronically transmitting a file containing the payment and explanation of benefits." (Doc. # 66 at Ex. A, B).

### iii.   **Whether Claims are Rendered Patentable by Limiting Abstract Idea to Health Care Industry, and Whether Preemption is Applicable Test**

Finally, Defendants argue that the claims are not rendered patentable simply by limiting the use of the abstract idea to the health care industry, as Plaintiff has allegedly done. (Doc. # 143 at 17); see Bilski, 561 U.S. 593 (finding that "limiting the abstract idea to one field of use" does not necessarily guard against preempting all uses of the abstract idea). Similarly, Defendants argue that preemption is not the test for subject matter eligibility under Alice. (Doc. # 168 at 7). According to Defendants, the Federal Circuit has similarly rejected Plaintiff's argument that its Patents are patent-eligible because they cover only "a single

mode of payment (stored-value card accounts)" as opposed to other payment means. (Id. at 8)(citing In re BRCA1- & BRCA2- Based Hereditary Cancer Test Patent Litig., 774 F.3d 755, 764 (Fed. Cir. 2014)("The preemptive nature of the claims is not ameliorated even if we accept [the] argument that other methods of comparison exist.")).

In response, Plaintiff argues that "[t]he fact that some of the limitations of [Plaintiff's] asserted claims may have been present separately in different industries does not render them unpatentable." (Doc. # 156 at 16). In fact, Plaintiff provides that a sound method for determining whether patent claims are unpatentable under 35 U.S.C. § 101 is inquiring whether such claims would entirely preempt the "approach in all fields" and "effectively grant a monopoly over an abstract idea." (Id.)(citing Alice, 134 S. Ct. at 2354).

Plaintiff also argues that its Patents do not preempt the payment to service providers by third party payers "in all fields." (Id.). To that end, Plaintiff submits that the Patents "do not even claim all modes of payment of health insurance benefits to providers by third party payers and do not claim the following payment modes: ACH payments, physical

checks, or physical credit, debit, or other stored-value cards." (Id.).

To further support its position, Plaintiff acknowledges that in rejecting the attack on the validity of the 904 Patent in a covered business method review, the PTAB agreed ". . . there is a myriad of methods of transmitting a payment . . ." that do not require the steps of Plaintiff's asserted claims. (Id.)(citing Doc. # 156-5 at 19). Therefore, Plaintiff provides that no preemption exists because Plaintiff's asserted claims are narrow, specific, concrete, and cover a single mode of payment (stored value card accounts), in one particular industry (health care), by one specific class (third party payers). (Id.).

In DDR Holdings, LLC, the Federal Circuit found that the claims at issue did not create a risk of preemption:

> It is also clear that the claims at issue do not attempt to preempt every application of the idea of increasing sales by making two web pages look the same, or of any other variant suggested by NLG. Rather, they recite a specific way to automate the creation of a composite web page by an "outsource provider" that **incorporates elements from multiple sources in order to solve a problem faced by websites on the Internet**. As a result, the '399 patent's claims include "additional features" that ensure the claims are "more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 134 S.Ct. at 2357. In short, the claimed solution amounts to an inventive concept for resolving this

> particular Internet-centric problem, rendering the
> claims patent-eligible.

773 F.3d at 1259 (emphasis added). Similarly, as articulated

by Plaintiff, the claims at issue "recite a 'specific way'

medical benefits are paid by a particular class (third party

payers) by incorporating elements from multiple sources (EOB

information from the health care claims administrator and

stored-value card account information from a stored-value

card processor) to solve a problem faced by the health care

industry." (See Doc. # 156 at 17). Therefore, the Court finds

that the asserted claims do not attempt to preempt "the

payment to service providers by third party payers in all

fields," and do not seek to grant Plaintiff a monopoly over

the relevant practice in the health care industry.

For the reasons set forth above, the Court finds that

Defendants have not met their burden and have not demonstrated

by clear and convincing evidence that each asserted claim of

Plaintiff's Patents are patent-ineligible under 35 U.S.C. §

101. Accordingly, Defendants' Motion is denied on this

ground.

### c. **Non-Infringement of 748 Patent**

Defendants move for summary judgment of non-infringement

of claims 7, 13, 19 and 25 of the 748 Patent by the current

"two-fax" and "hardcopy mailing" versions of the accused Pay-Plus™ Select system. (Doc. # 143 at 22). According to Defendants, all of these asserted claims "require[] combining stored-value card information and an [EOB] into a single electronic file or document." (Id.). However, Defendants submit that neither the "two-fax system" nor the "hard-copy system" combines credit card information and an EOB in a single file or document. (Id.).

> Instead, it is undisputed that the "two-fax system" always maintains the credit card information and the EOB in separate files, from the beginning of the process when the files are created to the end of the process when the files are separately faxed to the health care provider. Likewise, the "hard-copy mailing systems" always maintains the credit card information and the EOB in two separate and distinct files, from the beginning of the process when the files are created to the end of the process when the two files are printed and mailed.

(Id.). Therefore, according to Defendants, the "two-fax system" and "hardcopy mailing" system cannot infringe any of the asserted claims of the 748 Patent. (Id.).

Defendants' argument relies upon their proposed construction of various terms of the challenged claims. However, this Court did not adopt Defendants' proposed construction; specifically, the Court declined Defendants' position that the plain language of the Patents requires

"merging" into a single electronic file or document both the (1) stored-value card payment information and (2) an explanation of benefits. (Doc. # 197 at 17-18).

Rather, the Court found that the written description of the Patents' abstract *could be* read as a singular or plural interpretation. (Id. at 22); see Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1342-43 (Fed. Cir. 2008). Here, like in Baldwin Graphic, upon review of the prosecution history, specification, and the context of the Patents, the Court concluded that the term "merge" does not require application of the rule of singularity. (Id. at 23). Furthermore, the Court found that the Patent materials are devoid of any indication that the plain language of the claims "clearly indicates" that the relevant information should be merged into a "single" or "one" file or document. (Id. at 24). Therefore, as this Court declined to accept Defendants' construction of the term "merging," the Court denies Defendants' Motion for Summary Judgment as to the 748 Patent.

### d. **Non-Infringement of the 904 Patent**

Finally, Defendants move for summary judgment on non-infringement of claim 2 of the 904 Patent, which requires "intercepting the [EOB] and payment information transmitted from the administrator to the health care provider," because

28

"no version of Pay-Plus™ Select intercepts or otherwise obtains any information transmitted from an administrator to a health care provider." (Doc. # 143 at 28).

The Court notes that Defendants' argument again relies upon Defendants' proposed construction of various terms of the challenged claims. However, this Court did not adopt Defendants' proposed construction of the term "intercepting" contained within claim 2: "receiving, retrieving or otherwise acquiring an explanation of benefits and payment information from a transmission of that information that is sent **directly** from an administrator to a health care provider." (Doc. # 197 at 10).

As this Court previously found, a review of the 904 Patent as a whole fails to demonstrate that the addition of the term "directly" is required, as suggested by Defendants. (Id. at 11). To that end, Defendants failed to establish that the claims, specification, and prosecution history of the 904 Patent demonstrate that the patentee, Mr. Robert Allen, defined the claims – with reasonable clarity and deliberateness – to mandate a narrower interpretation (i.e., use of term "directly") of claim 2. (Id.). For support, the Court pointed to the "Detailed Description of the Preferred Embodiment" as an example (Doc. # 66-1 at 8), and found that

there is no requirement – explicit or otherwise – that such transmission shall go directly from administrator to health care provider, as suggested by Defendants. (Id. at 11-12). For that reason, the Court denies Defendants' Motion for Summary Judgment as the 904 Patent.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Pay-Plus Solutions, Inc. and Premier Healthcare Exchange, Inc.'s Dispositive Motion for Summary Judgment (Doc. # 123) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 1st day of July, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record